## THE INDIANA NATURAL AND ILLUMINATING GAS COMPANY *v.* THE STATE, EX REL. BALL.

[No. 19,395. Filed March 11, 1902. Rehearing denied May 20, 1902.]

CONSTITUTIONAL LAW.—*Equal Protection.*—*Gas Company.*—*Discrimination in Rates.*—A town ordinance authorizing a natural gas company, at its option, to charge a certain "flat rate" per year or month for service furnished, or a specified sum per 1,000 cubic feet to "any consumer," does not authorize such company to charge the meter rate to one person only, if substantially higher than the flat rate; since it would be a denial of the equal protection of the laws, in violation of the fourteenth amendment to the United States Constitution.

From Boone Circuit Court; *B. S. Higgins*, Judge.

Mandamus by the State on the relation of James A. Ball against the Indiana Natural and Illuminating Gas Company, to compel defendant to supply relator with gas on the basis of an annual or monthly rental instead of a meter rate. From a judgment for relator, **respondent** appeals. *Reversed.*

*S. M. Ralston* and *F. Winter*, for **appellant.**
*I. M. Sharp*, for appellee.

Gillett, J.—The appellee commenced this action in the court below to compel the appellant, by mandate, to supply the home of appellee's relator with natural gas service on the basis of what is known as a "flat rate", as distinguished from a meter rate. Issues were framed, and, pursuant to request, the court below, after hearing the evidence, prepared and filed special findings of fact, together with its conclusions of law thereon.

It is not necessary to discuss the correctness of the rulings of the trial court on the pleadings, as the same matters arise upon the special findings of fact and conclusions of law. The material facts in the case, as found by the court below, are these: That the appellant is a corporation; that on the 19th day of November, 1891, the board of trustees of the town of Thorntown duly passed and adopted an ordinance prescribing the terms upon which corporations incorporated for such purposes might lay and maintain pipes in the streets and alleys of said town for use in supplying said town and its inhabitants with natural gas for heating and illuminating purposes; that it was provided in said ordinance that any corporation accepting such grant should charge certain annual and monthly prices for the service furnished,.but that it should have the right, if it provided a meter, to require "any consumer" to pay for the gas used by him at a rate not exceeding twenty cents per 1,000 cubic feet of gas supplied; that said ordinance was accepted by a corporation known as the "People's Natural Gas Company", and that the appellant afterwards, and on the 15th

day of May, 1893, became its successor, and by virtue of the authority of said ordinance laid mains in the streets and alleys of said town, and entered upon and continued the business of supplying natural gas to said town and its inhabitants for heating and illuminating purposes; that it laid one of its mains in the street upon which the relator's lot abuts, and in front of the house thereon situated; that appellant connected the gas pipes in relator's house with said main, and from that time until the 5th day of January, 1900, supplied his house with natural gas for heating and illuminating purposes on the basis of the "flat rate" provided for in said ordinance; that on said day appellant's agent requested the relator to enter into a new and written contract, in consideration that appellant would not require him thereafter to pay for the gas he consumed by meter measurement, by which proposed contract, if signed by him, he would have agreed to pay a "flat rate" largely in excess of the ordinance requirement, and also have agreed to other conditions not provided for in said ordinance; that said relator refused so to do, and tendered payment of the amount that would be due from him for a certain time in the future on the basis of the "flat rate" that the ordinance provided for; that this tender was refused by appellant, and it shut off the flow of gas from relator's premises, and appellant's said agent informed him that he would be required to enter into said new proposed contract before it would furnish gas to him; that said relator afterwards and on the same day renewed his tender, and demanded that the gas be furnished his said house; that the appellant refused so to do, but said agent immediately informed relator that appellant would supply his house with said gas through a meter, and furnish and connect the meter at its own cost, if he would agree to pay for the gas consumed by meter measurement, at the rate of twenty cents per 1,000 cubic feet; that this offer was refused by relator; and that the gas was not furnished him. The court further found that at that

time no other customer in said town was required to pay for gas on a meter basis, but that all others were supplied on the basis of the "flat rates" provided for in said ordinance.

When appellant laid its mains in the streets of Thorntown, and began to exercise the right to sell to the inhabitants of said town a commodity under circumstances calculated to give it more or less of a natural monopoly,—since it would be impracticable for its inhabitants generally to supply said commodity each for himself,—the undertaking of said company became impressed with a public character; and it became its duty, while it continued to exercise its franchise, to serve the inhabitants of the municipality without invidious discrimination. *Portland Natural Gas, etc., Co. v. State, ex rel.,* 135 Ind. 54, 21 L. R. A. 639; *Westfield Gas, etc., Co. v. Mendenhall,* 142 Ind. 538; *Coy v. Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535; *State, ex rel., v. Consumers Gas Trust Co.,* 157 Ind. 345; *Munn v. People,* 94 U. S. 113, 24 L. Ed. 77; *State v. Columbus Gas, etc., Co.,* 34 Ohio St. 572, 32 Am. Rep. 390; *Delaware, etc., R. Co. v. Central Stockyard, etc., Co.,* 45 N. J. Eq. 50, 17 Atl. 146, 6 L. R. A. 855; *Shepard v. Milwaukee, etc., Co.,* 6 Wis. 26, 70 Am. Dec. 479; *Williams v. Mutual Gas Co.,* 52 Mich. 499, 18 N. W. 236, 50 Am. Rep. 266; *American Water-Works Co. v. State,* 46 Neb. 194, 64 N. W. 711, 30 L. R. A. 447, 50 Am. St. 610; *Inter-Ocean Pub. Co. v. Associated Press,* 184 Ill. 438, 56 N. E. 822, 75 Am. St. 184, and note as reported in 48 L. R. A. 568; *Haugen v. Albina, etc., Co.,* 21 Ore. 411, 28 Pac. 244, 14 L. R. A. 424; 2 Morawetz Priv. Corp., §1129; 2 Beach Priv. Corp., §835(d).

The relator was not bound to take gas upon any other terms than those prescribed in the ordinance. *Westfield Gas, etc., Co. v. Mendenhall, supra.* We are not, however, required to attach consequences to the action of appellant in turning off the gas. It is to be remembered that this action is to procure a peremptory mandamus,—a remedy

comparable to a proceeding, on the equity side of the court, for specific performance;—and, as mandamus looks to the future, we turn our attention to the question whether the relator was entitled to receive gas thereafter upon the basis of a "flat rate". Appellant had an option, under the ordinance, to furnish gas on the basis of a "flat rate" or on the basis of a meter rate; but, in view of the fact that appellant had not seen fit to require its other patrons in said town to pay on the basis of a meter measurement, the question arises whether relator is compelled to have his liability so determined.

While it is true that the ordinance of the town of Thorntown purports to authorize any natural gas company accepting the ordinance to charge twenty cents per 1,000 cubic feet for gas to *"any* consumer", yet we are of the opinion that such authorization will not allow the appellant to impose a. burdensome discrimination upon relator. We base this ruling, not upon the statute which authorizes the granting of such franchises, but upon the fundamental law. We refer to the fourteenth amendment to the federal Constitution. While it is probably true that the "privileges and immunities" clause of that amendment will not ordinarily protect a citizen of a state against hostile legislation by his own state (*Duncan* v. *Missouri,* 152 U. S. 377; Cooley's Const. Lim. 6th ed., 489, and note), yet in the subsequent portion of the amendment we find language used of a more comprehensive character. The words to which we refer are: "Nor shall any state * * * deny to *any* person within its jurisdiction the equal protection of the laws." The constitutional prohibition we are considering is but a crystallization of a principle that all who regard justice recognize as fundamental. The authority of municipalities to grant franchises, and the authority of private corporations to be such, and thereby to become such artificial entities that they may receive such grants, have their origin in the laws of the state; and municipalities lack the power

to authorize arbitrary and burdensome discriminations as between its inhabitants in the conduct of a business that is public in its character, and private corporations lack the authority to receive such grants, because the General Assembly, that may be said to be the parent of both classes of corporations, had no such power to transmit. The Supreme Court of the United States has spoken in no uncertain terms upon this general subject. Thus, in *Ex parte Virginia,* 10 Otto 339, 346, 25 L. Ed. 677, that court said: "We have said the prohibitions of the fourteenth amendment are addressed to the states. They are: 'No state shall make or enforce a law which shall abridge the privileges or immunities of citizens of the United States, * * * nor deny to any person within its jurisdiction the equal protection of the laws.' They have reference to actions of the political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A state acts by its legislative, its executive or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life or liberty without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state. This must be so, or the constitutional prohibition has no meaning. Then the state has clothed one of its agents with power to annul or evade it. But the constitutional amendment was ordained for a purpose. It was to secure equal rights to all persons, and, to insure to all persons the enjoyment of such rights, power was given to congress to enforce its provisions by appropriate legislation. Such legislation must act upon persons, not upon the abstract thing denom-

inated a state, but upon the persons who are the agents of the state in the denial of the rights which were intended to be secured." To the same effect, see *Scott* v. *McNeal,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; *Chicago, etc., R. Co.* v. *Chicago,* 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; *Nashville, etc., R. Co.* v. *Taylor,* 86 Fed. 168. An even more specific application of this general doctrine to the case before us is found in Elliott's Roads and Streets (2nd ed.), §430. It is there said: "It is not in the power of a state to enact any statute which operates to deny to citizens the equal protection of the laws. What the state cannot do directly it cannot authorize any of its instrumentalities to do. The inhibition contained in the fourteenth amendment to the federal Constitution extends to acts of state municipalities assuming to act under a state statute."

There can be no doubt that the appellee's relator is entitled to insist that such ordinance did not warrant an unjust discrimination against him. While the fourteenth amendment to the federal Constitution does not protect individuals against the acts of third persons not acting under authority of the State, yet we deem it clear that appellant, having engaged in a business of a public character by governmental authority, was bound to afford appellee's relator the right to use gas without fixing terms for the privilege that were substantially more burdensome than it exacted of its patrons generally in the town of Thorntown. It was competent for appellant to require all of its patrons in said town to pay for the gas they respectively burned on a meter basis, as provided in the ordinance; but, if such meter rate was substantially higher than the "flat rate", then appellant could not exact payment on the former basis from relator alone.

It is clear, however, that it is not enough for relator to show that he is required to pay for gas in a manner different from that in which others pay, in a case where the ordinance

purports to authorize the company so to require. An unlawful discrimination must be, in some measure, unjust or oppressive. It is difficult to accumulate a large number of authorities upon this subject. There are many cases in which recognition is given, *arguendo,* to the doctrine we assert, but they generally refer to these elements in too general terms to make their citation entirely apposite. The most direct authority that we have been able to find is that of *Cleveland, etc., R. Co.* v. *Closser,* 126 Ind. 348, 354, 9 L. R. A. 754, 22 Am. St. 593, where Elliott, J., in the course of a carefully written opinion, speaking on behalf of this court, said: "In the case upon which we are commenting a recovery was adjudged on the ground that the difference in the rate charged shippers of large quantities of goods and that charged shippers of small quantities was so gross as to be against public policy. We have no such question here. So far as concerns the question of the right to discriminate between shippers, we concur with the general doctrine of the case cited, for we have no doubt that an unjust, unfair or oppressive discrimination is prohibited by the soundest considerations of public policy; but, as we have already suggested, we do not believe that from the sole fact that there is a discrimination a conclusion can be inferred which invalidates the special contract between the carrier and the shipper, for, to warrant such a conclusion, without defying principle, another element must be added to the premises, and that element is this, the discrimination is unjust or oppressive."

We are not judicially advised, and the special findings of fact do not show, that under the terms fixed by the ordinance the use of natural gas on a meter basis would cost more than the "flat rate". On the contrary, it seems to us that the inference is, since the optional provision as to the method of charging was agreed to by the town trustees, whose duty it was to represent the citizens of the town, that the rates are approximately equal. If they are unequal, we have no

doubt that the fact would be susceptible of proof. Scientific observation must have been such that it can be determined with approximate accuracy what number of cubic feet of gas would flow through a particular "mixer" per hour, under a given pressure.

For the reason shown in this opinion, the special findings of fact did not authorize the conclusions of law drawn by the trial court. We have concluded, however, as a matter of justice, not to order said court to restate its conclusions of law, but to reverse the judgment, with directions to the said court to grant a new trial, and to grant leave to the parties to amend their respective pleadings, if they apply for leave so to do.

Judgment reversed, with directions to the trial court to grant a new trial, and otherwise to proceed in conformity to this opinion.