## HART, GUARDIAN, *v.* MILLER.

[No. 3,937. Filed May 27, 1902.]

PLEADING.—*Harmless Error.*—*Guardian and Ward.*—*Insane Person.*— In an action brought against the guardian of an insane ward for the support of the ward, no error was committed in sustaining demurrers to answers setting up the services of the ward, where the facts alleged could be proved under other paragraphs of answer, and such services were taken account of in the special findings. *pp. 229-233.*

SAME.—*Guardian and Ward.*—*Claim for Care of Ward.*—*Limitation of Actions.*—An averment in an answer in an action against a guardian for the support of an insane ward that the part of the claim which accrued six years before the commencement of the action did not accrue within six years before the bringing of the action was not equivalent to an averment that plaintiff's cause of action, or any part thereof, did not accrue within that period. *p. 233.*

GUARDIAN AND WARD.—*Necessaries Furnished Ward.*—*Order of Court.* —In order to charge an insane ward's estate with necessaries pro-

Hart v. Miller.

vided for the ward, at the instance of the guardian, and upon his promise to pay therefor, it is not necessary that such furnishing of necessaries be preceded by an order of court therefor. *pp. 233, 234.*

GUARDIAN AND WARD.—*Claim for Necessaries Furnished Ward.*—*Death of Guardian.*—Where in an action to recover for care and necessaries furnished an insane ward it appeared that the guardian at whose request the necessaries were furnished had died and his estate had been settled, it was not necessary for the plaintiff to show that he made any demand against such guardian or against his estate. *pp. 233, 234.*

SAME.—*Necessaries Furnished.*—*Order of Court.*—The question whether or not certain provisions made for an insane ward were such that the guardian, acting with due regard for the best interest of the ward, might properly make expenditure therefor out of the ward's estate, or create an indebtedness against the ward's estate therefor, may be determined by the court in an action to recover therefor, without a determination by the court, before the making of such provision, that such expenditures would be proper. *p. 234.*

EVIDENCE.—*Guardian and Ward.*—*Claim against Ward's Estate.*—Section 506 Burns 1901 does not preclude a claimant for necessaries furnished an insane ward from testifying as to a conversation between claimant and a former guardian, since deceased, in which the guardian promised to pay claimant for such necessaries out of the ward's estate. *pp. 235-237.*

SAME.—*Declarations by Person Under Guardianship.*—Where in an action against the guardian of an insane ward for care of the ward in which the guardian claimed that the ward rendered services for plaintiff for which the ward's estate was entitled to compensation, there was no error in admitting proof of statements made by such insane ward admitting to destroying certain property of plaintiff. *pp. 237-241.*

SAME.—*Guardian and Ward.*—*Claims Against Ward's Estate.*—*Declaration of Guardian.*—In an action for the care of an insane ward, it was not error to admit in evidence the testimony of witnesses detailing a conversation between the guardian and witnesses to the effect that plaintiff was keeping the ward for pay. *pp. 241-243.*

SAME.—*Opinion Evidence.*—*Rejection.*—In an action to recover for the care of an insane ward in which the guardian attempted to set off services rendered by the ward for plaintiff, available error can not be predicated upon the action of the court in rejecting the testimony of certain witnesses offered by defendant as to the value of the ward's services, where the court announced that evidence of the value of the ward's services would not be excluded, and the testimony of a number of witnesses for the defendant furnished evidence on which the court based its finding on such matter. *pp. 243, 244.*

Hart *v.* Miller.

EVIDENCE.—*Insane Person.*—*Guardian and Ward.*—The guardian of an insane person will not be heard on the trial of a claim against the ward's estate to claim that his ward was not incompetent to testify as a witness because he was not then insane. *pp. 244-248.*

From Wayne Circuit Court; *L. D. Stubbs,* Special Judge.

Action by Solomon Miller against George R. Hart as guardian of Samuel Hart, a person of unsound mind, for the care of such ward. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*R. A. Jackson, H. C. Starr* and *J. L. Rupe,* for appellant.
*J. F. Robbins* and *T. J. Study,* for appellee.

BLACK, J.—A demurrer to the complaint of appellee, consisting of two paragraphs, for want of sufficient facts, was sustained. On appeal to the Supreme Court, this ruling was disapproved. *Miller* v. *Hart,* 135 Ind. 201. The action was against Alonzo Osborn, as guardian of Samuel Hart, a person of unsound mind, and Samuel Hart. The first paragraph of complaint showed that Samuel Hart had been duly adjudged a person of unsound mind, in 1857, and had ever since been under guardianship; that Isaac Hart, his first guardian, having resigned, one John Hart duly became his guardian on the 5th of September, 1864, and continued as such until his death, September 16, 1889, whereupon, on the 18th of September, 1889, said Alonzo Osborn became guardian, and had since continued to be such; that from the 1st of October, 1864, until the 18th of September, 1889, the appellee kept, boarded, clothed, and did the washing for the insane ward at the special instance and request of his guardian, with the understanding and agreement with the guardian that the appellee should be paid and compensated for so doing by the guardian out of the estate of the ward in the hands of the guardian; that during that period the ward had no home or place to live other than that furnished by appellee, and that such boarding, clothing, washing for, and taking care

of the ward by appellee, during that period, was reasonably worth $4 per week, amounting to $5,000, which sum was due and wholly unpaid; that the ward had a large estate in the hands of his guardian of the value of $9,000, consisting of money, a large part being accumulated interest on the money of the ward while in the hands of his several guardians. Prayer for judgment that such sum was due the appellee, and that it was a legal and valid claim against the estate of the ward, and that the guardian be ordered and adjudged to pay that sum to the appellee out of the estate in his hands as such guardian. In the second paragraph, after showing the adjudication of the unsoundness of mind of Samuel Hart, and the appointment and service of the several guardians, that the guardian Osborn then had $9,000 in his hands belonging to the ward's estate, that the ward since he had been under guardianship had no home of his own, and had been during that time incapable of performing labor and unable to earn his own living, and to support himself by his labor, it was alleged that in March, 1877, the ward having no place to live, and no one to keep, board, clothe, do, and wash for him, the appellee, at the special instance and request of John Hart,— who was then the guardian as aforesaid of Samuel Hart,— and upon the express agreement of said John Hart that the appellee should be paid therefor, took the ward into the appellee's house, and kept, boarded, clothed, and provided for him, and did his washing and mending, and furnished him with all the proper necessaries of life, from March, 1877, until the 18th of September, 1889; that said boarding, etc., were reasonably worth, etc. Prayer that the amount of the appellee's claim and of the indebtedness to him be ascertained and found by the court, and that the amount found due him be allowed and adjudged as a valid claim and indebtedness against the estate of the ward, and that Osborn, as guardian, be ordered to pay the sum out of the estate in his hands belonging to the ward.

It was held by the Supreme Court that the suit was properly brought to subject the ward's estate to the payment of whatever sum the court should find due for necessaries furnished the ward in pursuance of the agreement made with the guardian, and that the demurrer of the guardian should have been overruled. As to the ward himself, it was held that, being of unsound mind, he could appear only by his guardian, and that the ward's demurrer should be struck out.

Upon the return of the cause to the trial court, the demurrer of the ward having been struck out, and that of the guardian having been overruled, the death of Alonzo Osborn, the guardian, and the appointment and qualification of George R. Hart as his successor in the trust having been suggested, the appellee filed a supplemental complaint showing that upon the settlement of the estate of Alonzo Osborn, deceased, his successor as guardian had received from the administrator of that estate the funds held by the decedent as such guardian, and substituting as defendant the successor, George R. Hart, as guardian, the appellant herein. The appellant filed an answer in nine paragraphs, the first a general denial. The other paragraphs were held sufficient on demurrer, except the second, fourth, and ninth, demurrers to which were sustained. The appellee replied by general denials.

On trial by the court a special finding was rendered, the facts being stated in substance as follows: July 8, 1857, in the court of common pleas of Wayne county, Samuel Hart was found and adjudged to be a person of unsound mind, and incapable of managing his own estate. The appointment and service of the several guardians were stated as alleged in the complaint. When John Hart became guardian he received of the former guardian about $2,500, the property of the ward. This action was commenced March 24, 1890, by the appellee against the ward and Alonzo Osborn, his guardian, who then had in his hands,

belonging to his ward, $7,000; and the appellant had in his hands as such guardian $8,000, the property of the ward. From October, 1864, until October, 1871, with the exception of short intervals of time, the appellee kept, boarded, lodged, and clothed the ward, and washed and mended for him, and took care of him, at the special instance and request of said John Hart, guardian, upon his promise that he would pay the appellee for so doing out of the estate of the ward. In October, 1871, the ward left the appellee's residence, and soon afterward was taken by John Hart, guardian, to the guardian's home, where he resided with his guardian for four years, during which time he was not provided for by the appellee. In the autumn of 1875, the ward, of his own volition, and not at the request or procurement of his guardian, returned to the appellee, who lodged, clothed, and provided for him until some time in the year 1877, without any new request or contract having been made by the guardian for him to do so. In the spring of the year 1877, the ward left the appellee and returned to the residence of his guardian, and a short time afterward returned to the appellee. In two or three days thereafter, John Hart, the guardian, again requested the appellee to keep and provide for the ward as he had done before, and promised that if the appellee would do so, he would pay the appellee for it, out of the ward's estate. In pursuance of this request, the appellee, from that time till February, 1889, did keep, board, lodge, and clothe the ward, and wash, mend, and provide for him. The ward was an unmarried man and never had a wife or child. His father and mother died prior to the year 1864, and from October, 1864, until he left the appellee's residence in 1871, he had no home other than at the house and residence of appellee. From the time the guardian requested the appellee to take care of and provide board, lodging, and clothing for the ward, in 1877, until February, 1889, the ward had no home other than that furnished by the appellee.

From the time the ward returned to the appellee in 1875, until March, 1877, the evidence, it was found, did not show whether or not the ward had left the guardian, or the home provided for the ward by the guardian, against the will of the guardian, but did show that he was with the appellee at his home until a short time previous to March, 1877. The boarding and lodging of the ward, and the washing and mending for him during the time he was with the appellee was worth $3 per week. His clothing, while he resided with the appellee, was furnished by the appellee, and was worth $40 per year. During the different periods when the ward was with appellee he rendered services for the appellee, of which the latter received the benefit, which were reasonably worth $6.25 per month. All the boarding, lodging, clothing, and provisions furnished to and for the ward prior to the time when he left appellee in 1871, were pursuant to the first contract made with the guardian. The boarding, lodging, clothing, and other provisions furnished and made for him by the appellee after the year 1871, and prior to March, 1877, were not furnished pursuant to any contract with the guardian, or any request from him; and all the board, lodging, clothing, and other provisions furnished or made by the appellee for the ward prior to March, 1877, occurred more than six years prior to the commencement of this action. The board, lodging, and provisions so made after March 1, 1877, until February 1, 1889, were furnished and provided, as aforesaid, at the request of John Hart, as guardian, about March 1, 1877, and pursuant thereto; and said board, lodging, and washing were reasonably worth $1,859, and the clothing furnished was reasonably worth $476.63, both amounting to $2,335.63. The services rendered by the ward for the appellee from March 1, 1877, until February 1, 1889, were reasonably worth $668.75. The court, subtracting the value of the ward's services from the amount of the appellee's claim thus found, stated as the amount due the appellee $1,666.88. It was

Hart v. Miller.

found that interest at six per cent. per annum on this balance from the commencement of the action to the time of the finding was $908.44, making the total amount due the appellee $2,575.32.

The court stated as conclusions of law, that so much of the appellee's claim as occurred prior to the 1st of March, 1877, was barred by the statute of limitations; that there was due the appellee, and he was entitled to recover, $1,666.88, with interest thereon at the rate of six per cent. per annum from March 24, 1890, amounting to $2,575.32, and was entitled to an order of court requiring the appellant, as guardian, to pay that sum to the appellee out' of the estate of the ward in the hands of the guardian; and it was accordingly adjudged that the guardian make such payment.

The appellant's motion for a new trial was overruled. In the second paragraph of answer, a demurrer to which was sustained, it was .alleged that before and until the ward went to the appellee's house to reside he had been living among his relations and working wherever he resided and made his home, without charge being made against him or his estate, because he was in good health, physically strong, and able to work, and his labor was ample' compensation for his boarding, clothing, washing, care, and support; and the appellee who was a relative of the ward well knew and understood such facts at all times, and was well acquainted with the ward, and well knew his disposition, the requirements for his care and support, his ability to labor, and the value of his labor. It was further alleged that the ward has never been of a vicious or troublesome disposition, or an insane person, but has been weak minded at all times, from childhood, but has always been as easily governed as a child, and not more troublesome to care for or provide for than an ordinary child; that he was reared on a farm, and was accustomed to farm work, and was reliable and fit to be intrusted with all kinds of farm work,

and was always so trusted and relied upon; that he was always very industrious, more so than the ordinary person, and at all times in his life he has been able and willing and has actually performed labor of greater value than the value of the care and support he required or received; that all these facts were well known and understood by John Hart, who was his guardian, when he began to live with the appellee, and thereafter until the death of John Hart; that, knowing these facts, John Hart, guardian, had no lawful power or authority to make any expense of the ward a charge against his estate, because the same was wholly unnecessary, and the ward at all times while he resided with the appellee, and before, regularly performed labor of greater value than any and all care and support furnished him by appellee.

In the third paragraph of answer it was alleged that during the period in which it was charged in the complaint that the appellee furnished boarding, etc., the ward performed labor and services for the appellee on his farm, at the appellee's instance, request, and direction, which were reasonably worth $5,000, for which the appellee never paid the ward or his guardian anything, which labor and service were reasonably worth more than any and all boarding, etc., furnished by the appellee. In the fourth paragraph, a demurrer to which was sustained, addressed to the appellee's claim and demand which accrued prior to April 24, 1884, it was alleged that such part of the claim and demand did not accrue within six years before the bringing of this action. The fifth paragraph was a general answer of payment. In the sixth paragraph it was alleged that the appellee was justly indebted to the ward and his estate for services rendered to the appellee by the ward at the special instance and request of the appellee and by his direction, and for work and labor done and performed for the appellee at his instance and request upon his farm and in his dairy, every day from October 1, 1864, to September 18, 1889,

in all $5,000, which sum was justly due the ward's estate from the appellee, and which the appellant offered to set off against any sum found due the appellee from the estate of the ward; and the appellant prayed judgment for the residue.

The seventh paragraph was addressed to the first paragraph of the complaint, and alleged that the appellee did not furnish or do any of the matters or things therein alleged, under the contract therein mentioned, after the 1st of March, 1877, and that the appellee's cause of action, if any, accrued at that date, and did not accrue within six years before the bringing of this action. In the eighth paragraph the appellant answered that the appellee did not furnish or do any of the matters or things in the complaint alleged under the contracts and requests or agreements mentioned in the complaint after the 1st of April, 1884; that the appellee's cause of action, if any, accrued prior to that date, and did not accrue within six years before the bringing of this action.

In the ninth paragraph of answer, a demurrer to which was sustained, it was alleged that the appellant had no information or knowledge of any of the requests, contracts, or agreements mentioned in the complaint having been made by John Hart, former guardian, with the appellee, but that, if made, they were all made without the permission, authority, sanction, or approval of the Wayne Circuit Court, "which at all of the said times" had charge, control, and jurisdiction of the ward, his person, and estate, and of John Hart as guardian thereof, and the appellee at all of said times knew that said John Hart was such guardian; that from the date of his appointment as such guardian until his death in 1889, John Hart, as such guardian, from time to time, as required by law, made reports to said court, and carried forward and showed therein, from one report to another in successive order, the balances owing by him as guardian to the estate of said ward; that in his last

report, which was made and filed September 1, 1888, he charged himself with a net balance owing said estate of $8,500; that he died intestate September 16, 1889, in Union county, Indiana, and letters of administration upon his estate were duly issued to one William Hart, by the Union Circuit Court; that the estate was solvent, and was finally settled on the 1st of November, 1890; that under an allowance and judgment of the last named court, which was duly made and entered upon a claim regularly filed against the estate of John Hart by Alonzo Osborn, as guardian of said ward, for the amount owing the estate of said ward by said decedent as his guardian, the administrator of said estate paid over to said Osborn, then guardian of said ward, in full and final settlement and adjustment of the 'guardianship account of John Hart, the sum of $9,000, being the amount owing the estate of the ward as shown by the last report of John Hart, guardian, with legal interest thereon to the date of such payment, and no more, which was the true amount owing the estate of the ward by the estate of the deceased guardian on account of the guardianship; that the appellee never made demand or claim of any kind against said John Hart, as guardian, or against the estate of the ward while in the hands of John Hart, as guardian, or against the estate of John Hart, but, with full knowledge that the estate of John Hart, deceased, was so being administered upon, and that it was solvent, stood by and suffered the estate to be finally settled without filing any claim against the same; that the appellee ought to have known and did know at the time of his alleged contracts with John Hart, as guardian, and at the time of his doing and furnishing the matters and things stated in the complaint, that John Hart, as such guardian, was wholly unauthorized to contract with him, or by such contract to bind the estate of his ward; that, should the appellee recover judgment herein, and should the same be paid out of the estate of the ward in the hands of the guardian, this

estate could not be reimbursed, because of the final settlement of the estate of John Hart, deceased, but would suffer loss to that extent.

It would seem to require little more than the statement of the contents of the pleadings and special finding, to sustain the action of the court upon the demurrers to the second, fourth, and ninth paragraphs of answer. It is not quite clear that any definite theory of defense can be applied satisfactorily to the second paragraph; and so far as any of the facts stated therein, separated from assumed conclusions of law, might be regarded as in any way available, the benefit thereof would be obtainable under the general denial and other paragraphs which remained in the record; and it appears that the trial court in its finding took account of the services of the ward and gave credit to the extent of their value. The fourth paragraph purported to answer as to that part of the claim "which accrued prior to the 24th of April, 1884," which was six years before the date of the commencement of the action; and the answer was, in effect, simply that the part of the claim "which accrued" six years before the commencement of the action "did not accrue" within six years before the bringing of the action. This, of course, was self-evident, but it was not equivalent to an averment that the appellee's cause of action, or any part of his cause of action, did not accrue within that period.

No sufficient defense was shown by the ninth paragraph of answer. The claim of appellee purported to be for necessaries provided for the ward at the request of the guardian and upon his promise that the appellee should be paid out of the ward's estate; and the purpose of the action was to obtain from that source payment for the reasonable value of such provision. This answer does not show that the appellee did not provide necessaries for the ward upon such request and promise. It was not needed that such furnishing of necessaries be preceded by an order of court therefor, in order to charge the ward's estate; nor was it

necessary for the appellee to proceed against John Hart, guardian, personally or against his individual estate or to make any demand of him or the administrator of his estate. The question whether or not the provision made for the ward by the appellee was such that the guardian, acting with due regard for the best interest of the ward, might properly make expenditure therefor out of the estate of the ward, or create an indebtedness of the ward's estate therefor, was presented by the issues and could be tried and determined by the court, as it was tried and determined in this cause, without a determination by the court, before the making of such provision that expenditures therefor out of the ward's estate would be proper and a prior order therefor based on such determination. See *State, ex rel.,* v. *Clark,* 16 Ind. 97; *Myers* v. *State, ex rel.,* 45 Ind. 160; *Corbaley* v. *State, ex rel.,* 81 Ind. 62; *Turner* v. *Flagg,* 6 Ind. App. 563; Henry's Probate Law, §789.

The provision for the ward for which reasonable compensation is sought was all made during the guardianship of the guardian at whose request it was made, and no one appears by the answer in review to have been misled or deceived to his hurt or to the injury of any estate, by any conduct of the appellee stated in the answer. The answer does not show any facts which at any time in the lifetime of John Hart, or at any stage of the settlement of the estate of John Hart, deceased, would have sustained a claim for reimbursement of the ward's estate from John Hart or his estate for money paid upon the appellee's claim out of the estate of the ward. It was not improper that the whole trust fund should be paid over by the administrator of the deceased guardian's estate to the successor in the guardianship, the settlement of the appellee's claim being properly a part of the settlement of the guardianship. The answer shows that the entire estate of the ward in the hands of his several guardians was paid over to each successor in turn, and had come to the possession of the appellant. From

Hart *v.* Miller.

that estate the appellee, by his complaint, sought payment, and from it he was entitled to compensation for the necessaries furnished to the ward as stated in the complaint, found to be necessary by the court in this action. The Supreme Court, in holding the complaint sufficient on demurrer, settled the question as to the liability of the ward's estate upon the appellee's claim contrary to the theory of defense on which the ninth paragraph of answer seems to proceed.

On the trial the court, over appellant's objection, permitted the appellee to testify as a witness to conversations between him and John Hart, guardian, wherein the latter requested the witness to keep the ward at the home of the witness, and promised that if he would do so, he (the guardian) would pay the witness well for it out of the ward's estate. One of these conversations occurred in 1864 and the other in 1877. If there was error in admitting such proof of the first arrangement between the appellee and the guardian, there was no recovery for the provisions made for the ward pursuant thereto; but the objection to the evidence of the verbal arrangement made in 1877 requires us to determine whether the appellee was a competent witness to testify to such a conversation between him and the guardian, the latter being deceased at the time of the introduction of the testimony, and the action being one brought by the witness against the successor in guardianship.

Our statute, §504 Burns 1901, being §274 of the code of civil procedure of 1881, provides, that, "all persons, whether parties to or interested in the suit, shall be competent witnesses in a civil action or proceeding, except as herein otherwise provided." Counsel for appellant, referring to §506 Burns 1901, being §276 of the code, admit that the exclusion contended for is not within the letter of the statute, but regard it as within its spirit. That section provides that in suits or proceedings in which an executor

or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate. This statute is an adaptation to the code of a statute on the subject of witnesses, in force prior to the enactment of the code, wherein it was provided that "in all suits where an executor, administrator, or guardian is a party, in a case where a judgment may be rendered either for or against the estate represented by such executor, administrator, or guardian, neither party shall be allowed to testify as a witness unless required by the opposite party or the court trying the cause, except in cases arising upon contracts made with the executor, administrator, or guardian of such estate," etc. Acts 1879, p. 245. See, also, Acts 1861, p. 51; Acts 1867, p. 225.

The omission in the code of all reference to suits wherein a guardian is a party seems to indicate that the legislature no longer regarded the reason for the provision concerning suits wherein an executor or administrator is a party as extending also to suits wherein a guardian is a party. Such omission, considered in connection with the provision of §504 Burns 1901, indicates the intention of the legislature no longer so to extend the provision as to incompetency to testify; at least, such significant omission excludes all conjecture, and renders immaterial any supposed similarity as to reasons for incompetency in cases in which an executor or administrator is a party and those in which a guardian is a party. The length to which the policy of increasing competency to testify should be extended, and the character of the exceptions which should be made to such statutory latitude, are matters within the province of the legislature, and the court can not vary the

statutory provisions because of any supposed hardships therein. The judgment could not affect the estate of the deceased guardian. His estate was not represented in the action, or interested in the result of this controversy; and the case is not within the letter or the policy of the statute. See *Durham* v. *Shannon,* 116 Ind. 403, 9 Am. St. 860; *Taylor* v. *Dusterberg,* 109 Ind. 165; *Hankey* v. *Downey,* 10 Ind. App. 500.

The court, over objection, permitted the appellee to testify to certain declarations of Samuel Hart, the ward, made while he lived at the home of the appellee, the specific objections being that the ward was not a party to the suit, and that, he being under guardianship, any declarations or conversations he had with the appellee would not bind the ward's estate or be admissions against him. One of the conversations in question related to seventeen goslings which had been killed, concerning which the appellee testified that the ward said he killed them and threw them in a stump; that he was not always going to have them in the water where the horses had to drink. Another conversation related to twenty-seven young turkeys which had died, and the appellee testified that the ward, in conversation with the witness, said that he gave them some salt and dough the day before, and that was what killed them. The ward was made a defendant by name, with his guardian, the appellant, though the defense was properly made by the latter. Yet the ward was the person really interested in the event of the suit to charge his estate in the hands of the guardian.

It is a reasonable rule that the statements of the real party in interest relevant to the issue, and against his interest at the time of the making thereof, are admissible against the representative of his interest who is the nominal party, though the person who made the statements be not a party to the action, such statements not being admitted to establish the fact that the person making them is the real

party in interest, but, that fact being established, to affect the interest of such real party. The admissions of the *cestui que trust,* the trust being otherwise established, are admissible, to affect, not the estate of the trustee, but the trust estate. *Hanson* v. *Parker,* 1 Wils. 257. See, also, *Harrison* v. *Vallance,* 1 Bing. 45; *Doe* v. *Wainwright,* 3 Nev. & P. (Q. B.) 598; *Pike* v. *Wiggin,* 8 N. H. 356.

In 1 Greenleaf on Ev., §180, it is said, that in general the admissions of any party represented by another are receivable in evidence against his representatives; but the declarations or admissions must have been made while the party making them had some interest in the matter, and they are receivable in evidence only so far as his own interests are concerned.

In Best on Ev., §529, it is said: "Self-disserving statements, etc., made by a party when his mind is not in its natural state, ought in general, to be received as evidence, and his state of mind should be taken into consideration by the jury as an infirmative circumstance. Thus a confession made by a prisoner when drunk has been received." In many criminal actions the statements of the defendant made while intoxicated have been admitted in evidence against him, the question as to whether he was so intoxicated as not to understand, being left to the jury.

In *Hariman* v. *Brown,* 8 Leigh 697, it was held that the admission of one against his own interest, who could not be compelled to testify, ought to be received as if he were dead. It was said that the fact that the declarations were against the interest of the person making them "is a sanction for his veracity, which the law has always respected." In the case now in hand the party in interest making the statements was of unsound mind, and incapable of managing his estate, and under guardianship, both at the time of the trial and at the time of the making of the statements.

Hart v. Miller.

In Gillett's Ind. and Collat. Ev., §113, cited by the appellee, it is said: "The fact that a defendant was drunk or insane does not, *per se*, render a confession incompetent. The weight to be given it, when made under such circumstances, is a question for the jury." The following cases are cited: *Commonwealth* v. *Howe*, 9 Gray 110; *State* v. *Feltes*, 51 Iowa 495, 1 N. W. 755; *State* v. *Grear*, 28 Minn. 426, 10 N. W. 472, 41 Am. Rep. 296; *Lester* v. *State*, 32 Ark. 727; *White* v. *State*, 32 Tex. Cr. Rep. 625, 25 S. W. 784; *Finch* v. *State*, 81 Ala. 41, 1 So. 565. All these cases related to confessions during intoxication.

On trial of a charge of murder, the prisoner, who was an ignorant orphan boy of crude and feeble mind and irresolute will, having been shown to have confessed his guilt in the presence of a furious crowd then threatening to hang him, it was held to be error to instruct the jury that the confession was convincing proof of his guilt. *Butler* v. *Commonwealth*, 63 Ky. 435.

In *People* v. *Robinson*, 19 Cal. 40, it was held that under an indictment for murder it was reversible error to admit evidence of words uttered by the defendant while asleep. "If the defendant was asleep, the inference is that he was not conscious of what he was saying, and words spoken by him in that condition constituted no evidence of guilt."

*Atchison, etc., R. Co.* v. *Potter*, 60 Kan. 808, 58 Pac. 471, 72 Am. St. 385, was an action for personal injury of the plaintiff, a child. It was held error to reject evidence that he was heard by the witness a short time after the injury to say that he was hurt while attempting to climb or hold upon a passing train. It was said by the court on appeal that the trial court excluded the evidence on the ground that the plaintiff was incapable of understanding the nature of an oath, and that the court had previously refused to receive his evidence for the same reason. "In this," it was said, "there was error. There is probably no more important kind of testimony than the declarations of

suitors made against their own interests, and the admissibility of such testimony does not depend upon whether the person making such declarations recognizes or understands the nature of an oath."

Our statute renders void the contracts of persons of unsound mind under guardianship as such. They continue liable for their torts and for necessaries, though adjudged to be of unsound mind and incapable of managing their estates. The question as to permitting proof of their self-disserving declarations relating to their torts is not to be determined by the decision as to their competency to testify as witnesses, of which we will have occasion to speak further.

It could scarcely be contended that in any case the ravings of a maniac should be received as his admission of a fact against his interest. But the phrase "of unsound mind" covers every grade of mental derangement or incapacity, and, no matter what its kind or degree, if it be adjudged that thereby the person of unsound mind is incapable of managing his estate, this will furnish occasion for the appointment of a guardian, and while under such control he will be incapable of making a contract. In the case before us it was claimed by the appellant that the ward was capable of rendering service for which his estate was entitled to compensation, and there was much evidence tending to show his capacity. It was adjudged that he rendered valuable services. It was while thus employed and being cared for by the appellee that, shortly after the occurrence of an act in connection with his services, he spoke the words relating thereto of which the appellee testified. We are not disposed to hold that the mere fact that a party is under guardianship as a person of unsound mind, and incapable of managing his estate, necessarily in all cases renders his admissions against his interest incompetent evidence, without reference to his actual mental state, as observed and learned by the court, when not introduced for

Hart *v.* Miller.

the purpose of charging him as a contracting party. If deemed competent by the court, their weight would be determinable by the jury.

The special purpose of the evidence in question was not stated. Although the adjudication of the ward's unsoundness of mind and incapacity to manage his own estate was at least *prima facie* evidence of such status as to all persons, being analogous to an adjudication *in rem,* yet on the trial there was a legitimate contention between the parties as to the actual mental and physical condition of the ward with reference to the reasonable value of keeping him, and his ability and disposition to be serviceable to the appellee on his farm. It is contended, in effect, for the appellee, that the language of the ward was admissible as an aid to such investigation. If it was admissible for any purpose, though not for such purpose as was expressed in the objection to its introduction, there could be no available error in overruling the objection; if it could be limited to a legitimate use by an instruction, it might be admitted; and if not restricted by instructions, this would be a separate question. It can not be denied that the expressions of the ward, so introduced, tended to show his disposition toward the domestic animals on the farm, and might help in some degree to understand the degree of his intelligence for the performance of services which the appellant claimed were performed by him. So, whether or not the evidence was admissible to prove admissions, we are not disposed to undo the result of the trial because of its introduction.

A question is argued concerning the admission of certain testimony detailing conversations between John Hart, guardian, and the witnesses who were permitted to testify in relation thereto, to the effect that the appellee was keeping the ward for pay. Some of his testimony related to a time within the period for which, in the finding of the court, no allowance was made to the appellee, and therefore the

evidence did not affect the result to the disadvantage of the appellant. In the testimony of one witness, however, the time of the conversation was within the period for which the court awarded compensation to the appellee. The testimony of this witness showed that about 1882 or 1883 the witness was at the farm of the appellee when John Hart, the guardian, came and asked the witness if Samuel, the ward, was there, and being told by the witness that he was in the barn, the guardian said that he had been advised that the ward had been at some place, and had left that place, and that he (the guardian) was looking after him,—seeing where he was. The witness was then permitted, over objection, to testify that the guardian said: "It seems as if he wouldn't live with any of the rest of them; that he had been so long with Mr. Miller that he supposed that he would have to stay there, if Mr. Miller would keep him, and that he had money and would pay him for it." It appears that the guardian, when he made these statements, was engaged about the duties of the guardianship, and acting in the interest of his ward, and his statements had relation to what he was so doing, and explained his conduct. Though the guardian is not an agent having authority from his ward, yet his function is analogous to that of an agent, being appointed thereto by the court to control the ward and manage his estate.

In *Buffalo Loan, etc., Co.* v. *Knights Templar, etc., Assn.,* 126 N. Y. 450, 27 N. E. 942, 22 Am. St. 839, it was held that a guardian occupies a position analogous to that of an agent of an adult, and that the declarations of a guardian should be put upon a footing with those of an agent; a ward, however, having the advantage that the court will relieve him from the consequences of the guardian's prejudicial conduct. It was said: "The office of a guardian is one of trust. He is empowered to act for the ward in the matters confided to him as guardian, in furtherance of his interests. Under the law of agency the admissions

of an agent, made within the scope of his powers, are admissible in connection with some *res gestae,* to bind the principal.  But the admission must be relevant to the matter in hand and accompany the transaction to which it relates.  *  *  *  The court will not permit the rights of a ward to be prejudiced by the admission of a guardian. His interests are under the protection of the court, and it will intervene to relieve the ward from prejudicial conduct on the part of the guardian."

Question is made here concerning the action of the court in rejecting certain offers to prove the value, per month, of the services of the ward for the appellee.  Some of these offers related to times within the period which the court in its finding excluded in taking the account, making no allowance to either party for that period.  Proof of how much the ward's services were worth in that period could not have benefited the appellant.  In one instance of such exclusion the witness at some time between 1870 and 1885, had seen the ward milking and straining some milk, one Sunday morning, and testified that he (the witness) was acquainted with the reasonable worth of the services of farm hands at that time in the neighborhood.  We can not say that the court erred in regarding this as an insufficient basis on which to found an opinion of this witness as to the reasonable value of the service of the ward per month.

Another witness, who, about 1878 or 1880, as he passed along the road, had seen the ward hoeing corn in the adjoining field, and who, also, had seen the ward perform some farm work a number of years before that time, was not permitted to state his opinion as to the reasonable worth, per month, of the services of the ward as a farm hand.  The court might, with reason, regard this witness as not having shown himself qualified to give an opinion which would materially aid in estimating the value of the services actually rendered by the ward during the period for which an allowance was made for such service.  The

court announced that evidence of the value of the ward's service would not be excluded, and the testimony of a number of witnesses for the appellant furnished evidence on which the court based its finding on this matter. The appellant was not materially injured by any of these exclusions of evidence.

Complaint is made of the refusal of the court to permit the appellant to ask certain of his witnesses whether or not the ward was a man of industrious habits, and what his habits were in the matter of work. The question before the court to which it was intended to direct this offered evidence related to the amount and value of services rendered by the ward. The objections to these rulings were not saved according to the rules laid down by the Supreme Court, the offers of proof being too late. *Hoover* v. *Patton,* 158 Ind. 524. The general characterization as an industrious man of one suing on a *quantum meruit* for the value of his work and labor, by witnesses who were to base their opinion to that effect upon their occasional observations, would not have materially aided the court trying the cause, where the quantity and character of the service rendered and the time employed therein were to regulate the amount of recovery. If such opinion evidence was admissible, the court had grounds on which to conclude, in the exercise of its reasonable discretion, that the witnesses were not qualified sufficiently to express such opinions at the time of the trial. The court had the aid of much evidence of facts on which to base a conclusion as to the compensation for the ward's services, and we can find no sufficient ground for interfering with its conclusion because of its rejection of these opinions of witnesses formed on long past, casual observations.

The appellant called the ward "as a witness on behalf of the defendant" and caused him to be sworn as a witness, the appellee objecting for the reason that the ward was a person of unsound mind. After the witness, answering counsel

for the appellant, had stated his name, appellant asked him who were his brothers. The court sustained the appellee's objection to this question, and thereupon counsel for appellant offered to prove in answer to this question that the ward had five brothers, and proposed to propound other questions, not stated to the court, for the purpose, as announced, of enabling the court to judge of the character of his intelligence, his powers of memory, his reasoning faculties, his knowledge as to farm work, and of the kind of farm work about which testimony had been given in the case. This offer having been rejected by the court, the appellant asked leave to propound to the witness preliminary questions for the purpose of enabling the court to determine, and with a view to asking the court to determine, whether the witness was, in the judgment of the court, at that time, a competent witness, for the purpose, if the court should determine that he was competent, of making the ward a witness in the case for the appellant; and the appellant offered to show by the answers of the witness, if leave were given to propound such questions, that the witness was then competent to testify as a witness in the cause. This proposal also was rejected by the court. There are technical reasons on which this court may decline to interfere with the action of the court as to both of these offers of the appellant. Before the first offer the witness was asked to state who were his brothers, and the objection of the appellee to this question was sustained by the court before the appellant's offer of proof was made and the statement of appellant's purpose was announced. As to the second offer, no question after that above mentioned appears to have been propounded to the witness, and the court can not be said to have ruled out any question asked for the latter purpose.

It had been proved that the witness had been adjudged to be a person of unsound mind, and incapable of managing his own estate, and had been placed under guardianship,

and was still under guardianship. Our statute, §505 Burns 1901, provides: "The following persons shall not be competent witnesses: First, persons insane at the time they are offered as witnesses, whether they have been so adjudged or not." The general rule where the matter is not regulated by statute is: "That a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the question at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself, and any competent witnesses who can speak to the nature and extent of his insanity." *District of Columbia* v. *Armes,* 107 U. S. 519, 27 L. Ed. 618.

In *Breedlove* v. *Bundy,* 96 Ind. 319, where a party was introduced as a witness in his own behalf, and the opposing party objected on the ground of the insanity of the witness, it was held that the record made nine years before by two justices of the peace for his committal to a hospital for the insane was not sufficient, alone, to exclude the witness. It was said: "This is not like a case where the lunatic has been regularly adjudged insane by an inquisition and placed under guardianship, after which the presumption of insanity continues until he has been regularly adjudged sane and discharged from his guardianship."

In *Hull* v. *Louth,* 109 Ind. 315, the court, speaking of an offer to examine as a witness Emma J. Taylor, said: "The court did not err in refusing to allow appellant to examine Emma J. as a witness. She had been adjudged to be insane, and was under guardianship. Her condition was no better at the time of the trial. Such persons are not competent witnesses. §497 R. S. 1881."

In 1 Greenleaf on Ev., §566, it is said concerning inquisitions: "The general rule in regard to these documents, is, that they are admissible in evidence, but that they are

not conclusive, except against the parties immediately concerned and their privies.  *  *  *  So, it has been repeatedly held, that inquisitions of lunacy may be read; but that they are not generally conclusive against persons not actually parties."  The granting of letters of guardianship of a lunatic has been held not conclusive against his subsequent capacity to make a will, but *prima facie* evidence of incapacity.  2 Greenleaf on Ev., §690; *Stone* v. *Damon,* 12 Mass. 488; *Harrison* v. *Bishop,* 131 Ind. 161, 31 Am. St. 422.

In *Hoyt* v. *Adee,* 3 Lans. (N. Y.) 173, it was held that an inquisition finding a person to be a lunatic, being analogous to proceedings *in rem,* is, as against persons not parties or privies, *prima facie* evidence of his insanity and consequent incompetency, upon objection made to him as a witness on the ground of lunacy, and is not conclusive evidence except against the parties immediately concerned and their privies.

If the offered witness is insane, his mental infirmity does not merely affect his credibility, but renders him incompetent, under our statute.  The witness can not be rejected upon objection that he is insane without proof to that effect. The inquisition by which he was placed and continues under guardianship is evidence, being analogous to an adjudication *in rem.*  The words "whether they have been so adjudicated or not," in our statute relating to the incompetency of persons as witnesses, refer to the adjudication in a proceeding to establish unsound mind and procure the appointment of a guardian.  §2714 *et seq.* Burns 1901.  If there has been no such investigation and adjudication, and the person offered be then found by the court to be insane, he is incompetent.  The case before us did not involve such a question, or the mode of procedure for its determination. The person for whom a guardian is appointed in a statutory inquisition for such purpose is already adjudged to be an insane person within the meaning of the statute concerning

witnesses. Whatever may be the proper course in cases not such as that now before us, it would seem reasonable to say that a party to the action, having his standing therein solely as the guardian of an insane person, could not be heard on the trial thereof to claim that his ward was not then incompetent to testify as a witness because he was not then insane.

The conclusions of law stated upon the facts specially found seemed to be sustained by the decision of the Supreme Court on the former appeal, holding the complaint sufficient.

Judgment affirmed.