IN THE MATTER OF INSANITY OF MARTIN HARRELSON, APPELLANT, v. JOHN P. FLOURNOY, GUARDIAN, ETC., RESPONDENT.—78 S. W. (2d) 895.

Kansas City Court of Appeals. December 3, 1934.

*James M. Houston, W. P. Houston* and *J. S. Brierly* for appellant.

*William B. Dickinson, Martin B. Dickinson* and *Crouch & Crouch* for respondent.

REYNOLDS, C.—On October 1, 1926, the appellant, Martin Harrelson, was, by the Probate Court of Cass County, adjudged of unsound mind and incapable of managing his own affairs; and William S. Flournoy was appointed guardian of his person and estate.

The record shows that, at such time, appellant was seized of an estate of the approximate value of $100,000, consisting of personal property including notes, mortgages, and bonds, and of real estate both in fee and under ninety-nine year lease in Missouri, California, and Arizona, including farms, apartment buildings, and other pieces of property.

On April 17, 1933, the appellant filed in the said probate court his affidavit setting out his former adjudication of unsoundness of mind and incapacity to manage his affairs; alleging that he had been restored to his right mind and that he was not at such time insane or of unsound mind, but was a person of sound mind and was sane and capable of managing his affairs; and praying that the court hold an inquiry as to his sanity as provided by the statutes of Missouri in such cases and that, if upon such inquiry it should be found that he was sane and capable of managing his affairs, he be discharged from guardianship and his guardian required to settle his accounts and restore to him his property.

It, in substance, appears from the abstract of record that, from an adverse finding and judgment in the probate court upon said inquiry held, appellant duly perfected an appeal to the Circuit Court of Cass County and that transcript thereon was duly filed in said court on July 14, 1933, together with the original application and affidavit of date April 17, 1933.

The cause, being tried *de novo* in the circuit court, resulted in a verdict by the jury on September 30, 1933, finding that appellant had not been restored to his right mind and was not at such time of sound mind and capable of managing his own affairs, upon which verdict judgment was entered by the court on said date adjudging that appellant had not been restored to his right mind and was not then of sound mind and capable of managing his affairs.

From such judgment, appellant prosecutes this appeal, based upon alleged error upon the trial in the refusal of certain instructions offered and in the giving of certain instructions requested, and confines his assignments of error to such complaints.

In the course of the proceedings in the circuit court and prior to the trial, respondent, by motion to dismiss, challenged the capacity of appellant to make the affidavit upon which the inquiry was based, which motion was denied by the court.

Respondent also, prior to the trial, filed in the circuit court a motion that appellant be required to furnish security for costs, no bond having been furnished by him upon the appeal. This motion was also denied.

The respondent excepted to the action of the court upon each of the motions referred to.

The evidence upon the trial is not set out in the bill of exceptions, other than it is stated therein that there was evidence introduced

by the respective parties upon the trial tending to prove certain facts bearing upon and within the issues—upon which facts the instructions given and those requested and refused were based—as follows:

"1. That plaintiff was a resident of Cass County, Missouri, and had been such resident all his life;

"2. That he was thirty-nine years old;

"3. That his estate was of the approximate value of $100,000 or more consisting of personal property including notes, mortgages and bonds, and of real estate, both in fee and under ninety-nine year lease in Missouri, California and Arizona, including farms, apartment buildings, and other types of property.

"4. That he was at the time of the giving of such evidence restored to his right mind.

"5. That the affidavit or information under which he was adjudicated of unsound mind offered and received in evidence, is in words and figures as follows, to-wit:

"In the Probate Court of Cass County, Missouri.

"Now comes Catherine Harrelson of Belton, Cass County, Missouri, who is the mother of Martin Harrelson of said Belton, Missouri, and informs the court that said Martin Harrelson is a person of unsound mind and incapable of managing his affairs and she prays the court that an inquiry thereinto be had by the court.

"CATHERINE HARRELSON.

"State of Missouri, County of Cass.

"Now comes Catherine Harrelson and upon her oath states that to her best information and belief the facts stated in the foregoing information are true.

"CATHERINE HARRELSON.

"Subscribed and sworn to before me this 16th day of September, 1926.

"V. I. BARE,
"Notary Public.

"(Seal)

"Examined, approved and filed September 22, 1926.

"LESLIE A. BRUCE,
"Judge of Probate.

"6. That the order entered October 1, 1926, by the Probate Court of Cass County, Missouri, upon the hearing under said information, offered and received in evidence, is in words and figures as follows, to-wit:

"Record Book 16, page 647:

"(Trial and Verdict, Guardian Appointed, Continued for Bond.)

"Estate of Martin Harrelson, Unsound Mind, Wm. S. Flournoy, Guardian.

"Comes Otis C. Martin, sheriff of this county, and makes return on notice served on Martin Harrelson, by delivering a copy of same to said Martin Harrelson, on September 27, 1926. The court finds

said Martin Harrelson was duly served with a true and perfect copy of original notice in manner and form as provided by law, on September 27, 1926.

"This matter coming on regularly for trial and said Martin Harrelson, not being present in court, is represented by D. C. Barnett, attorney and complainant being represented by Crouch & Crouch, attorneys. It is ordered a venire issue to the sheriff of this county for a jury of twelve good and lawful men, residents of this county. Comes the sheriff and returns into court the following who are chosen to act as jurors to try this cause, to-wit: Hogan Davis, I. A. Stone, A. L. Phillips, Winfrey Russell, Harry Denham, Theodore Sweitzer, Chas. Reece, John Dunn, Loren Honley, Robert Austin, Leo Armstrong and Chas. Bird.

"This cause is taken up, evidence heard and submitted to the jury, who retire to consider their verdict and having fully considered same return into court the following verdict: 'We, the jury, find Martin Harrelson of unsound mind and incapable of managing his own affairs. Chas. Bird, Foreman.' It is ordered and adjudged by the court that Martin Harrelson is a person of unsound mind and incapable of managing his own affairs. It is ordered a guardian be appointed to take charge of the person and estate of said Martin Harrelson. Come Mrs. J. B. Harrelson and Ben Harrelson and request the court, in writing, to appoint Wm. S. Flournoy as guardian of Martin Harrelson, unsound mind. The judge finds Wm. S. Flournoy is a proper and suitable person to act as such guardian and he is hereby appointed as such guardian and ordered to enter into bond in the penal sum of $30,000, conditioned as required by law. This cause is continued for bond."

Appellant's chief complaints herein are based upon the refusal of instructions 1, 2, 7, and 9, requested by him, and the giving of Instruction D, asked by respondent, and the giving by the court of its own motion of Instruction C-1 and the instruction relating to the form of the verdict.

### OPINION.

■ At the threshold of this case, we are met by the insistence of respondent that this proceeding is void and by his motion to dismiss the cause. It is insisted that appellant himself, being the ward and under adjudication of unsoundness of mind, has no capacity to make the allegation herein of restoration to his right mind or to make the application for his discharge and that respondent's motion to dismiss the cause for such reason, having been erroneously denied by the trial court, should be sustained here and the proceeding dismissed.

When it is considered that the adjudication of unsoundness of mind under which appellant was placed under guardianship has no con-

clusiveness as to continuing incapacity (32 C. J., p. 646, para. 225; R. S. 1929, sec. 493) and that there are times when a person so adjudicated may be restored to his right mind and that such time, if it comes, must come before the application for restoration may be made and that such restoration must exist at the time the application is made, it does not appear incongruous that the ward should be permitted to file such application in his own behalf. If restored, he, doubtless, would know as much about his restoration as anyone; and it is a matter finally for the determination of the court or a jury, anyhow. If he were not permitted so to do, where restored, it might sometimes work a hardship as he might not always readily find some other person willing to do it for him.

There is excellent authority for permitting him to do so unless he is prohibited by the statute. It is in harmony with the practice pursued in the chancery courts of England. [Cockrill v. Cockrill et al., 79 Fed. 143, 92 Fed. 811; Buswell on Insanity, art. 69.]

We, further, are unable to find that he is so prohibited by our statute although it may appear therefrom that the person filing the application might be, by the court, required to give security for costs and, in cases where the ward has filed the application, such requirement might be impossible of compliance by reason of the ward's legal incapacity to execute the contract providing for such security. Such, however, if true, is not sufficient, in our opinion, to be construed as a prohibition against the making and filing by him of his own application for the hearing. The motion to dismiss is denied.

■ The appellant complains of Instruction C-1, given by the court of its own motion, wherein it advised the jury that "—in this hearing, a person to be of 'unsound mind' or 'insane person' must be a person who is not possessed of mind and reason equal to the full and clear understanding of the nature and consequences of his act or acts, as the ordinary prudent person would, in the ordinary affairs of life, under like and similar circumstances" and that, before the jury could find a person incapable of managing his affairs, it "must find him first to be of 'unsound mind' or 'insane person,' as defined in this instruction," and alleges that a measure of understanding was therein required which was unwarranted and above that required to be possessed by law by one before he could be found to be a person of sane mind and placed an unjustified burden upon him in his efforts to secure such a finding and a discharge from guardianship.

The respondent contends that the appellant has misconstrued the instruction in construing it as requiring him to prove that he was a person possessed of mind and reason equal to the full and clear understanding of the nature and consequences of his act or acts as the ordinarily prudent person would understand such in the ordinary

affairs of life under like and similar circumstances and in construing it as pronouncing that a person is of unsound mind or insane unless he is possessed of such mind and reason equal, etc., when, in fact, all that the instruction declares is that a person with such mind and reason is not of unsound mind. True, the instruction did not directly require that appellant or any other person should be a person possessed of mind and reason equal to the full and clear understanding of his act or acts, etc., before he could be regarded as sane or so found; but it did do so by indirection and implication. It does not appear that the instruction advised the jury just what condition of mental capacity was required to be shown to justify a finding or an adjudication that one who had, previously thereto, been adjudicated of unsound mind and placed under guardianship had been restored to his right mind and was sane and was seeking an adjudication of such restoration and of sanity, other than that it could not be so found if he did not possess such mind and reason equal to a full and clear understanding, etc. It nowhere in the realm between full and clear understanding and idiocy set up any standard of mental capacity or lack thereof required to be shown.

It left the jury to roam about and draw the inference that, if appellant was not a person possessed of mind and reason equal to the full and clear understanding of the nature and consequences of his act or acts as the ordinarily prudent person would understand such in the ordinary affairs of life under like and similar circumstances, then he was insane and of unsound mind and was therefore not a sane person and restored to his right mind. It thereby placed the burden on appellant to show that he was a person of such understanding before it could be found or adjudicated that he was sane and restored to his right mind. The instruction might have been well enough if the case on trial had been a proceeding under Section 448, Revised Statutes of 1929, where it was being sought to establish that appellant was of unsound mind and incapable of managing his affairs and to place him under guardianship; but, here, the appellant has already been adjudged of unsound mind and placed under guardianship and is now, in this proceeding, seeking to avoid such former finding upon proof that conditions have changed and that he has been restored to his right mind and is now sane and capable of managing his affairs. He was entitled to have such issue fairly and squarely put to the jury—whether he had been so restored and was now a sane person and capable. The instruction did not do this in any clear manner for the appellant. Of course, a person with a full and clear understanding cannot be adjudged of unsound mind and incapable; but it does not follow, from the mere fact that he does not possess such an understanding, that he is to be adjudicated of unsound mind and incapable. He may, nevertheless, possess an understanding sufficient to know the right and the wrong

of his particular act or acts with reference to the care, management, and disposition of his property and affairs and to act with discretion with reference thereto; and, so long as he has such sufficient understanding, he should not be subjected to guardianship. And, if, after having been subjected to guardianship, he has been so far restored to his right mind and his sanity as to have such full understanding of the nature and consequences of his acts with reference to the care, management, and disposition of his property in the ordinary affairs of life and to act with discretion thereto, he should not be continued under guardianship but discharged therefrom. In order to place him under guardianship in the first instance, his understanding, powers of reasoning, and judgment should be so far reduced or destroyed by mental weakness that he is incapable of knowing the right and the wrong of his particular acts with reference to his property and affairs before he can be said to be of unsound mind and incapable of managing his affairs; and the converse thereof is true—that, where such condition of mind does not exist but, instead, the subject has sufficient understanding, powers of reasoning, and judgment to know the right and the wrong of his particular acts with reference to the care of his property and affairs, he should not be subjected to guardianship, or, if previously so subjected, should not be so continued. The term "unsoundness of mind," while it covers the whole range of mental weakness from idiocy up, yet has a determinate and fixed significance importing not mere weakness of understanding but a total deprivation thereof.

It is not every impairment of mind that disqualifies one from the management of one's property. There must be such mental impairment as to render the subject incapable of understanding and of acting with discretion in the ordinary affairs of life. [32 C. J. 630, 631.] Unfitness to manage his estate judiciously is not sufficient. [32 C. J., supra.] Even though a man may not have, in the judgment of other men, sufficient intelligence and understanding to manage his affairs in a proper and prudent manner, yet he may not be, legally speaking, of unsound mind. [Buswell on Insanity, vol. I, sec. IV, page 12; 22 Cyc. 1113, footnote.] Unsoundness of mind exists where there is an essential deprivation of the reasoning faculties. [32 C. J., pages 621, 622; Fiscus v. Turner et al., 125 Ind. 46, 1. c. 48, 49.] Weak minds differ from strong ones only in the extent and power of their faculties; but, unless they betray a total lack of understanding or idiocy or delusion, they cannot properly be considered unsound. [Stewart v. Lispenard, 26 Wend. (N. Y.) 1. c. 303, 304.]

In Fiscus v. Turner et al., supra, it was held by the Indiana Supreme Court, under a statute very much like our own, that unsoundness of mind is where there is an essential privation of the reason-

ing faculties or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life.

The law, in fixing the standard of positive legal competency, has taken a low standard of capacity; but it is a clear and definite one and therefore wise and safe. [Stewart v. Lispenard, supra.]

To establish any standard of intellect or information, beyond the possession of reason in its lowest degree, as in itself essential for legal capacity, would create endless uncertainty, difficulty, and litigation, would shake the security of property, and wrest from the aged and infirm that authority over their earnings and savings which is often their best security against injury and neglect. If you throw aside the old common law test of capacity, then proof of wild speculation or extravagant or peculiar opinion or of the forgetfulness and prejudices of old age might be sufficient to shake the fairest conveyance or impeach the most equitable will. [Stewart v. Lispenard, supra.]

The logic and the reason in the case last cited are just and sound. While what was said was in a case concerning the requisite mental capacity for testamentary disposition where, perhaps, a lower degree of capacity is ordinarily recognized as sufficient than that required in the making of contracts or the proper care and management of property in the ordinary transactions of life, it commends itself alike in the latter cases. In the latter cases even, the highest degree of intellect and clearness of mind are not required. In such cases, there may exist impairment of mind, confusion, and lack of clear understanding and reason; yet, if there exists sufficient reason and clearness of mind for the understanding of the nature of the act or acts in question and the consequences thereof, unsoundness of mind for the transaction of the business to which such acts relate does not exist within the legal and determinate meaning of that term; and no basis is found for an adjudication of incapability of managing one's affairs so as to subject one to guardianship or to retain one under guardianship who has been previously adjudicated of unsound mind and placed thereunder.

We are therefore constrained to hold with appellant that Instruction C-1 as given by the court, at least in the particulars discussed, was erroneous and should not have been given.

We have carefully considered the points made in respondent's brief contrary to the conclusions herein reached and carefully considered the authorities cited by him in connection therewith; and, while there appear many varying views therein expressed—some of which are, doubtless, influenced by express statutes differing from our own—we do not find them of such controlling influence here as to justify a different conclusion from that reached by us under the authorities above cited herein. It is unnecessary to discuss them

separately here, as they have been considered in connection with the conclusions reached and are concluded thereby.

■ Appellant makes the further criticism of such instruction that it was erroneous and failed to declare the law in advising the jury that, before a person could be found incapable of managing his affairs, he must first be found to be a person of unsound mind or an insane person. We find that we are unable to agree with appellant's contention. The instruction properly declared the law in such particular.

The phrase "unsound mind" covers every grade of mental incapacity. [Hart v. Miller, 29 Ind. App. 222, 64 N. E. 239.]

Our statute, Section 448, Revised Statutes 1929, providing for the adjudication of one as an insane person and incapable of managing his affairs, requires that such person be a lunatic, an idiot, or a person of unsound mind and incapable of managing his affairs and that he must be so found in order to be placed under guardianship. It is provided by Section 505 of our statutes (Revision of 1929) that whenever the words "person of unsound mind or insane person" occur in Article 18 (Revision of 1929), relating to guardianships and curators of insane persons, they shall be construed to mean an idiot, or a lunatic or a person of unsound mind and incapable of managing his own affairs, as the case may be upon proof.

In order that a person may be placed under guardianship in connection with his incapacity to manage his own affairs under the statute relating to guardians and curators of insane persons, his unsoundness of mind must also be made to appear. Otherwise, there is no basis in our statute for the appointment of a guardian for one incapable of managing his affairs (Burke v. McClure et al., 211 Mo. App. 446, 245 S. W. 62), unless under Section 508, Revised Statutes 1929, one be charged as an habitual drunkard or user of cocaine or other drugs therein mentioned. There must be an adjudication of insanity along with the adjudication of incapability. The two are not to be separated.

In Burke v. McClure et al., supra, l. c. 451, the court quoted approvingly from State v. Montgomery, 160 Mo. App. 724-733, the following:

" '—the affidavit on which the insanity inquiry is based is required to state two things, viz., that the party is an idiot, lunatic, or person of unsound mind and that he is incapable of managing his affairs. The allegation that he is incapable of managing his affairs is as essential as the allegation that he is of unsound mind.' "

This court, after such quotation, proceeded to add:

"It necessarily follows that it is as essential to charge in the information that the person sought to be made a ward is an idiot, lunatic, or of unsound mind as to charge that he is incapable of

managing his affairs. Failure of either allegation is fatal to jurisdiction.''

In the case cited, of Burke v. McClure et al., supra, the information sought an adjudication of incapability to manage his affairs upon an allegation that, owing to the advanced age of the one sought to be placed under guardianship, his mind was in such condition that he was incapable of managing and looking after his affairs and interests, without charging also that he was an idiot, lunatic, or a person of unsound mind.

It follows that the incapability to manage one's affairs must spring from one's unsoundness of mind or be inseparably connected therewith in order that an adjudication may be had upon which to base a guardianship and the instruction complained of was not erroneous in telling the jury that, before it could find a person incapable of managing his affairs, it must first find him to be of ''unsound mind'' or an ''insane person.'' The instruction merely required that, before one could be found incapable, that one must also be found to be of unsound mind or an insane person.

■ The appellant next assigns error in the giving of Instruction D for the respondent, contending that it required the jury to find, by the weight of the evidence, that appellant had not only been restored to his right mind but that he was capable of managing his affairs and that, in thus requiring that it be found that he was capable of managing his affairs, it placed a burden upon appellant that was unwarranted in that there was no such issue in the cause.

It is contended by appellant that inasmuch as Section 493, Revised Statutes of 1929, provides that, upon the filing of an application in the probate court in writing alleging that a person who has heretofore been decreed by such court to be of unsound mind or insane has been restored to his right mind, an inquiry should be held as to the sanity of such person, the issues upon such inquiry are limited to the sanity of such person and whether or not he has been restored to his right mind; that the issue as to whether he is of unsound mind and capable or incapable of managing his affairs is not involved; that the instruction was erroneous in requiring the jury to find that he was of sound mind and capable of managing his affairs when all that it should have been required to find was whether or not appellant had been restored to his right mind and was sane.

The various sections of our statute relating to guardians and curators of insane persons, when considered together, clearly indicate the intention of the Legislature to include within its provisions all classes of deranged persons, whether idiots, lunatics, or persons of unsound mind rendering them incapable of managing their affairs and to subject them all alike to guardianship upon adjudication as

being of unsound mind or to a discharge therefrom upon a finding of sanity.

The words "idiot," "lunatic," and "person of unsound mind and incapable of managing his affairs" are used without discrimination. [In re Crouse, 140 Mo. App. 545, 120 S. W. 666; R. S. 1929, sec. 505.] Therefore, upon an inquiry authorized by the Legislature as to the sanity of any such person under guardianship, it is to be considered whether such person is an idiot, a lunatic, or a person of unsound mind and incapable of managing his affairs. It is not sufficient that mere unsoundness of mind is found to exist, but it must be such unsoundness of mind as renders one incapable of managing his affairs.

It necessarily follows that, upon this inquiry under Section 493, upon alleged restoration to rightness of mind or discharge from guardianship, the same issues as to sanity or insanity at the time of the later inquiry and as to the capacity of the subject to manage his affairs are in question as were in question upon the previous inquiry under Section 448—upon the original inquiry under which he was adjudicated to be a person of unsound mind and incapable of managing his affairs. The only difference in such inquires is as to the burden of proof. In the original inquiry, the burden was upon the petitioner or informant seeking the adjudication of appellant's unsoundness of mind. In the later inquiry, the burden was upon the appellant, the petitioner who seeks his discharge, to show his restoration to his right mind. Upon the previous inquiry, the informant charged, and it was adjudicated, that appellant was a person of unsound mind and incapable of managing his affairs. Clearly, inasmuch as the later inquiry is for the purpose of avoiding the adjudication upon the previous one—where the proof warrants—it is necessary, in order so to warrant, that it be made to appear that the situation upon which the former adjudication rests no longer exists. It is therefore necessary that appellant show upon the inquiry for his discharge that he had not only been restored to his right mind and was sane but that he was capable of managing his affairs. The instruction was not erroneous in so requiring. Indeed, it is alleged in appellant's allegation for his discharge that he was, at the time of his filing, a person of sound mind, sane and capable of managing his affairs, and had been restored to his right mind. Such contention, for such further reason, is not open to appellant.

■ Neither was the instruction subject to the criticism of the appellant that thereunder the appellant might have been found of sound mind and also incapable of managing his affairs. The instruction does not use the word "both" in connection with the requirement that appellant be found restored to his right mind and capable of managing his affairs, as might appear from appellant's criticism in his brief, but merely requires a finding that he has been restored

to his right mind and that he is now of sound mind and capable of managing his affairs. The one merely flows from the other, and the jury could not have been misled thereby to believe that it could find that he had been restored to his right mind and, at the same time, find that he was not capable of managing his affairs.

■ The appellant next complains of the instructions given by the court of its own motion relating to the form of the verdict. However, the record in this cause does not show that any exceptions were made to the giving of such instructions by appellant at the time they were given. He is therefore not entitled to a review of his assignments thereon.

■ Appellant next complains of error upon the part of the court in refusing his requested instructions 1, 2, 7, and 9. The instructions 1 and 2 were doubtless refused by the court for the reason that they did not embody a submission of the issues as to whether the appellant was capable of managing his affairs but, upon the other hand, told the jury that the only question involved was whether he was now sane or insane. The court was justified in refusing them. Instructions 7 and 9 were covered by the last paragraph of Instruction C-1, given by the court of its own motion; and there was therefore no error in refusing them. One of the contentions made under this point as to the refusal of instructions 1 and 2 and largely made by appellant throughout the case with respect to errors alleged in the giving and refusal of instructions by the court and otherwise appears to be based upon his construction of the language of Section 493, supra, from which it appears that, upon the filing of an application or an allegation in writing in the probate court duly verified alleging restoration of mind upon the part of one who had previously been adjudicated insane therein, the court is required thereupon to hold an inquiry as to the sanity of such person and from which he argues that it follows that, upon such inquiry, the issues are limited to the sanity or insanity of such person at the time of the filing of the allegation and whether or not at such time he has been restored to his right mind. Such contention has hereinbefore been fully considered with reference to appellant's objection to respondent's Instruction D and there determined against appellant's contention. It is unnecessary to discuss it further. It is resolved against appellant here.

■ The appellant further contends that the said instructions requested by him in using the word "insanity" follow the language of said section and that therefore was all that was required in submitting the case. It is true that there are instances where it is sufficient to follow the language of the statute in giving an·instruction, but we do not think this is one of such instances. The term "insanity" covers so many different degrees of insanity—that of an idiot, a lunatic, and a person of unsound mind incapable of manag-

ing his affairs, and all other degrees of unsoundness of mind—that, in the submission of the issues to the jury, it is important that the jury be informed fully as to such elements as were or might be involved in the case under the general terms "sanity" and "insanity" as well as the element that appellant had been restored to his right mind. There was no error in the refusal of appellant's requested instructions numbers 1, 2, 7, and 9, as asked.

■ The appellant, for final assignment, complains that the last paragraph of Instruction C-1, given by the court of its own motion, and Instruction D, given as requested by respondent, were in conflict, the one with the other—that the jury might have found one way under one and another way under the other—and that it is impossible to tell which instruction it did follow in the verdict returned. We have not been able to discover any such conflict, in fact, as that suggested by the appellant in his brief. When the law is considered, what is claimed by appellant to be a conflict between the two does not, in fact, appear as a conflict. By what was said and held with reference to the last paragraph of Instruction C-1 and what was said and held with reference to Instruction D, when under discussion, it is apparent that the grounds upon which appellant contends that there was a conflict between the two instructions have no foundation in fact and are imaginary only. The complaint is ruled against the appellant.

On account of the error in the second paragraph of Instruction C-1, as set out in paragraph 2 of this opinion, the judgment below should be reversed and this cause remanded for another trial. The judgment below is, accordingly, reversed; and the cause is remanded for a new trial. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed, and the cause is remanded for another trial. All concur.