BADER, Administrator, Respondent, v. CHICAGO MILL & LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, November 8, 1908.

1. REFERENCE: Findings of Referee: Conclusions of Law. The finding of facts by a referee when approved by the trial court are conclusive on the appellate court if supported by substantial evidence, but if the referee erred in his conclusions of law, the appellate court may set aside his erroneous conclusions and apply the law to the facts found by him.

2. CONTRACTS: Ambiguous Contracts. A contract which provided that one party to it should be employed to collect certain bills and apply the proceeds of the same towards the payment of certain designated debts, was not ambiguous.

3. ————: ————: Interpretation by Parties. Where the parties themselves have given a contract a practical construction, their construction is a proper guide to its meaning; but this rule applies only where the contract is ambiguous, vague or obscure in its terms.

4. ————: ————: ————: Unambiguous Contracts. Such a rule can not be invoked where the meaning of the contract is not in doubt, because there is no room for interpretation. Where a contract between two parties provided that one of them should collect certain accounts and apply the proceeds to the payment of specified debts, an interpretation by the parties that such proceeds might be applied to other purposes was unwarranted and will not be upheld by the courts.

5. ———: ———: ———: **Estoppel.** Where parties agreed
to a certain interpretation of a contract and one of them relied
upon certain representations of another as to its meaning, and
where both parties had equal means of knowing what the con-
tract contained, neither party was estopped to contend for the
true interpretation of the contract.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C.*
*Riley,* Judge.

REVERSED.

*Faris & Oliver* for appellant.

This agreement is in no sense ambiguous. Its
meaning upon its face is so clear that he who runs may
read and understand. But even if it were ambiguous
and uncertain and indefinite, as it is not, it must be,
when construed, so construed as to be held most strongly
against the maker, or him who makes profert of it—
*verba fortius accipiunter contra proferentum.* Neither
a surety, a guarantor, nor an acceptor can be charged
beyond the precise terms of his engagement. Shine's
Administrator v. Bank, 70 Mo. 524; Cochrane v. Stewart
63 Mo. 424; Fisse v. Einstein, 5 Mo. App. 78; State ex
rel. v. Sandusky, 46 Mo. 377; State ex rel. v. Weeks,
92 Mo. App. 359.

*S. J. Corbett* and *C. G. Shepard* for respondent.

(1) The law as to the interpretation of written
contracts seems to be: That the dominating factor is
the mutual intention of the parties who made it. This
is to be collected from the words of the instrument it-
self, and the facts and circumstances that gave it birth.
And when the contract has been acted on between the
parties, the interpretation placed upon it by the parties
thereto should be the guiding star by which the courts
are governed in its construction. Wegmann v. Roth-
well (Mo. App.), 99 S. W. 59; Wilson v. Wilson (Mo.
App.), 92 S. W. 145; Fletcher v. Sims & Graham

(Ark.), 86 S. W. 993; Kauffman v. Raeder, 47 C. C. A. 278, 54 L. R. A. 247; Masterson v. Heitman & Co. (Tex. Civ. App.), 77 S. W. 986; Hardwick v. Can Co. (Tenn.), 88 S. W. 797; Construction Co. v. Tie Co. (Mo.), 84 S. W. 87; Ireland v. Spickard (Mo. App.), 68 S. W. 748; Trapp v. Conley (Ky. App.), 89 S. W. 514; Union Trust Co. v. Railroad (Ind.), 48 L. R. A. 41; Iron Works v. Park Association (N. J. App.), 19 L. R. A. 456; Jewelry Co. v. Bertigg, 81 Mo. App. 393; Dry Goods Co. v. Bank, 81 Mo. App. 46. (2) The appellant, by its acts, conduct and interpretation of the contract and agreements entered into between it, Thompson and Huffman, induced and was the sole cause of Carl Huffman furnishing Thompson moneys, goods, wares and merchandise to the full amount sued for, which he would not have done, had not appellant's agent, D. L. Russell, assured him that it was all right to furnish Thompson, just as his father had done, and that he would pay no money to Thompson, but that the proceeds of the timber should pass through his hands. Appellant, during the time said contract was being so interpreted, was receiving the direct benefits of the cash, goods, wares and merchandise furnished Thompson by Huffman, in this: that appellant was enabled without expending its own money to get the timber, which it had paid for standing in the woods, placed on the river bank without furnishing Thompson the necessary means itself. And after so interpreting said contract and receiving the benefits thereof, it is now estopped to place a different interpretation on said contract to the detriment of the W. H. Huffman estate. Construction Co. v. Hayes, 89 S.W.936; Dry Goods Co. v. Bank, 81 Mo.App. 46; Mining Co. v. Fidelity & Casualty Co. (Mo. App.), 103 S. W. 1098; Rogers v. Female College (Ark.), 39 L. R. A. 636; Brenner v. Insurance (Mo. App.), 74 S.W. 406; Ratcliff v. Lumpee, 82 Mo. App. 335; Canning Co. v. Brokerage Co., 115 Ill. App. 71; Wall v. Mount, 121 Ga. 831; Cooper v. Brazelton (C. C. A.), 135 Fed. 476;

Hooke v. Financier Co., 99 App. Div. 186, 90 N. Y. S. 1012; Anthes v. Schroeder (Neb.), 103 N. W. 1072; Larson v. Anderson (Neb.), 104 N. W. 925; Dye v. Crary (N. M.), 85 Pac. 1078; Williams v. Ketcham (Ind. App.), 7 N. E. 285.

BLAND P. J.—The action is bottomed on the following contract:

"This agreement, made and entered into this thirty-first day of July, 1900, by and between W. H. Huffman, of Pemiscot county, in the State of Missouri, party of the first part, and J. W. Thompson, of Pemiscot county, Missouri, party of the second part, witnesseth: That the said party of the second part, in consideration of the covenants and agreements herein contained, and in consideration of and in order to pay certain debts due and owing to first party, as well as for debts due Pemiscot County Bank for which said first party is indorser, the second party agrees to and with the said first party, that said first party shall be empowered to collect and shall collect and apply toward the payment of the debts due to the said first party and to Pemiscot County Bank the proceeds of all timber which I have bought from Joe Little, Frank Avis, Scott McDonald, also the timber on forty acres land bought of John Sullivan, near Kinfolks Ridge, and that which is on my land, and all the timber now on the bank of river, all on Island 16 and under contract to Chicago Mill & Lumber Company, and any and all timber which I may come in possession of, excepting a claim of Chicago Mill & Lumber Company of $303, which is to be paid first out of proceeds of said timber; all other proceeds of timber shall be subject to order of said first party until the debts above-mentioned are paid. This agreement shall not be revoked or rescinded by either of the parties hereto, until the whole of the said indebtedness owing from the said second party to the first party and Pemiscot County Bank shall have been paid

and discharged in full; provided, that the same may be revoked and rescinded if both of said parties hereto agree to revoke and rescind the same.

"This agreement shall be taken and considered by the Chicago Mill & Lumber Company as an order for the payment of said sum to the said first party. This agreement may be accepted by the said Chicago Mill & Lumber Company by their indorsement, but the same shall be as valid and binding upon the parties hereto as though indorsed by said party above-named."

The defendant accepted the provisions of the contract and from time to time paid money to W. H. Huffman in recognition of its acceptance. The facts and circumstances leading up to and existing at the time the contract was made, succinctly stated, are as follows: "The mill company had a contract with Thompson for the delivery of timber on the banks of the Mississippi river, in Pemiscot county, some of which had been delivered at the time the contract sued on was entered into. Some of the timber Thompson agreed to deliver was to be cut from his own land, the balance from the land of the parties named in the contract, which timber the mill company had purchased for Thompson. Huffman was engaged in a general mercantile business at Caruthersville, and Thompson had become indebted to him in the sums named in the contract. After the execution of the contract, Huffman furnished Thompson such supplies, on credit, as were necessary to enable him to continue the delivery of logs on his contract with defendant. Huffman died January 1, 1901, at which date Thompson owed him the sum of $358.68 for supplies furnished after the execution of the contract. After Huffman's death his son Carl continued the mercantile business in his father's name and continued to extend credit to Thompson until the amount, including the notes mentioned in the contract, amounted to $1,311.19, exclusive of credits by payments made by the mill company. The

action is to recover this balance. By agreement of parties the cause was referred to B. A. McKay, Esq., as referee. McKay qualified, heard the evidence and made the following report to the court:

"I, the undersigned, duly appointed by the Pemiscot Circuit Court as referee to hear and try all the issues in said cause, a certified copy of which appointment is hereto annexed, do hereby report my proceedings as such referee:

"I did, on the sixteenth day of May, 1906, take the oath prescribed by law, which said oath is hereto annexed, and herewith returned.

"And on the seventeenth day of May, 1906, said plaintiff appearing by S. J. Corbett and C. G. Shepard, his attorneys, and said defendant appearing by Faris and Oliver, its attorneys, and both parties waiving notice by the referee of the time and place for the hearing of said cause, announced themselves ready for the hearing of said cause, I proceeded to hear the evidence.

"The evidence offered by both plaintiff and defendant, together with the rulings thereon, will appear by the transcript thereof hereto annexed, which, together with the exhibits offered and referred to in said hearing, and which are attached to the transcript of the evidence, make a part of this report.

"Upon the evidence thus adduced I find the facts to be as follows:

"On the thirty-first day of July, 1900, one J. W. Thompson, who was engaged in placing along the banks of the Mississippi river certain logs for the defendant herein, and being a man of limited means desired to have plaintiff furnish him with merchandise and extended to him certain other credit; that upon said thirty-first day of July, 1900, said J. W. Thompson and W. H. Huffman made and entered into a written contract, by which said Thompson agreed to and by the terms of said contract empowered said W. H. Huff-

man to collect all moneys due to said J. W. Thompson by defendant herein until said W. H. Huffman should be fully paid for all credit extended said Thompson by said Huffman. By the terms of said contract certain indebtedness was expressed as being the debts due and owing by said Thompson to said Huffman as well as certain debts due Pemiscot County Bank.

"I further find that said defendant herein became guarantor for said Thompson under the terms of said contract; that subsequent to the making of said contract said defendant notified said Huffman that it had been informed that Thompson intended giving him, said Huffman, an order for all balance due on all logs, and that as soon as defendant was notified of such fact it would pay no money to any one except Huffman.

"I further find that on the first day of January, 1901, said W. H. Huffman departed this life and that said J. W. Thompson was at said date then indebted to said W. H. Huffman in a considerable sum; that subsequent to the death of said W. H. Huffman, Carl Huffman, the son of the deceased, carried on and conducted said mercantile business of the said W. H. Huffman for the benefit of the estate; that said Carl Huffman was uncertain as to his right, after the death of said W. H. Huffman, to further extend credit under the terms of this contract, and before proceeding further under said contract, he advised with said Thompson and with one D. L. Russell, who was the agent of the defendant, as to the propriety of proceeding further under the terms of said contract; that they all conferring together interpreted said contract to give Carl Huffman the right, representing the estate of W. H. Huffman, to continue furnishing Thompson the same as W. H. Huffman had been doing in his lifetime, and that J. W. Thompson was to receive no money out of said logs until the indebtedness then owing to the estate of W. H. Huffman, as well as all the goods, moneys and merchandise furnished said J. W. Thompson by

Carl Huffman was paid in full; that thereafter and upon that basis said Carl Huffman continued to furnish said J. W. Thompson with the goods, wares and merchandise as set out in the itemized statement filed with the petition of plaintiff herein, which fact was fully known to the agent, D. L. Russell, of defendant, Carl Huffman frequently asking said agent, D. L. Russell, when the payment would be made for the goods, wares and merchandise he was then furnishing said J. W. Thompson.

"I further find that during the life of said contract that J. W. Thompson delivered to defendant $3,559.69 worth of logs, all of which said amount was paid to said J. W. Thompson or on his drafts and orders except $303, the amount due and owing to defendant from J. W. Thompson at the date of said contract, $763.91, which was paid through W. H. Huffman during his lifetime and Carl Huffman conducting the business of deceased for the benefit of the estate, leaving a balance of $2,492.78, out of which to pay the account to plaintiff.

"That instead of paying said amount so due plaintiff, defendant paid said amount to J. W. Thompson or through his orders.

"As a conclusion of law from the above facts I find that defendant, having together with Carl Huffman and J. W. Thompson construed said contract so as to permit said Carl Huffman to continue furnishing said Thompson, and having received the benefits therefrom, that defendant is now estopped to deny the validity of the entire transaction under said contract.

"I therefore recommend that judgment be rendered in favor of plaintiff in the sum of $599.90, balance due on the store account, and $748.84, balance due on notes, making a total of $1,349.74.

"And all the said papers, exhibits, evidence, orders, proceedings and report are herewith returned to court,

as witness my hand this, the eighteenth day of July, 1906.

"B. A. McKAY, Referee."

Defendant moved to set aside the report, assigning twelve reasons therefor. The court overruled the motion, approved the report and entered judgment for plaintiff as recommended by the referee.

As stated above the reference and the referee were agreed on by both parties and the action being one at law, the referee's finding of the facts, when approved by the trial judge, are conclusive on an appellate court, if supported by substantial evidence. [Young v. Powell, 87 Mo. 128; Vogt v. Butler, 105 Mo. 479; Howard County v. Baker, 119 Mo. 397; Bissell v. Warde, 129 Mo. 439; Roberts v. Hendrickson, 75 Mo. App. 484; Lee v. Dunn, 29 Mo. App. 467.] We think there is substantial evidence to support the referee's findings of the facts and threfore will not disturb the same. But if the referee erred in his conclusions of law, we may set aside his erroneous conclusions and apply the law as we find it to the facts found by him. [Steffen v. City of St. Louis, 135 Mo. 44; Lingenfelder v. Wainwright Brewing Co., 103 Mo. 578; Moniteau National Bank v. Miller, 73 Mo. 187; Kennard v. Peck, 19 Mo. App. 342; Goetz v. Piel, 26 Mo. App. 634.]

The contract between Huffman and Thompson provided, "that said first party (Huffman) shall be empowered to collect and shall collect and apply toward the payment of the debts due to the said first party and to Pemiscot County Bank the proceeds of all timber," etc. It also provided, in substance, that after the payment of $303, to the mill company, all the other proceeds from the timber (from lands described in the petition) should be subject to Huffman's order until the debts mentioned in the contract should be paid. It is, therefore, not a matter of doubt as to what the parties meant, namely, that the proceeds of the timber to be

delivered to defendant by Thompson, after paying his debt to the Company, should be applied to the payment of the specific debts mentioned in the contract and described as then due. There is nothing ambiguous, vague, or obscure in the contract. But it is contended by plaintiff that the parties to the contract construed it as a security for supplies to be thereafter furnished Thompson by Huffman, and acted upon this construction. There is some evidence in support of this contention, and the referee found as a fact that the parties so construed the contract and so acted upon it. Adopting this finding as the truth of the situation, the legal question presented for solution is, Shall the court disregard the plain and unambiguous terms of the contract and adopt that construction which the parties put upon it, though that construction operates to read into the contract words not found in it and which cannot be supplied by implication or by any reasonable intendment, or by reason of any doubt as to the meaning of the contract as written? Where the parties themselves have given a contract a practical construction their construction is a proper guide to its meaning. [Patterson v. Camden, 25 Mo. l. c. 21; Green v. Higham, 161 Mo. l. c. 338; San Jacinto Oil Co. v. Ft. Worth Light & Power Co., 93 S. W. 173.] This wise and practical rule for the interpretation of contracts applies only where the contract is ambiguous, vague, or obscure in its terms, or where there is some uncertainty as to the objects or subject-matter intended to be embraced in or excluded from its operation. It cannot be invoked when there is no doubt as to the meaning of the contract —where there is no room for interpretation. It is only in doubtful cases that the action of the parties has any influence in the interpretation of the contract. [Drug Co. v. Saunders, 70 Mo. App. l. c. 227, and cases cited therein.] To give the contract the interpretation the referee found the parties acted upon would, in effect, permit a party to a plain, unambiguous

contract to vary its terms by parol proof, that he and the other party did not act upon the contract as written, but upon an interpretation of it clearly unwarranted by the contract as agreed upon and reduced to writing. We think, therefore, that the referee and the learned circuit judge were in error in holding that the contract embraced the debts of Thompson to Huffman, contracted after the date of the execution of the contract.

Though the referee did not so find, plaintiff contends that defendant should be held liable under the doctrine of equitable estoppel. The evidence relied on as estopping defendant from denying liability is this, that Carl Huffman testified that after his father's death he "went to see Mr. Russell (defendant's agent) about the contract and talked with him in regard to it and he (Russell) said the contract was all right and he would stand to it;" that anything witness sold Thompson was all right and thereafter witness sold Thompson the supplies between January and June, 1901, itemized in the account sued on. This conversation had reference to the contract, which at the time of the conversation was in Carl Huffman's possession, therefore his means of knowing what was in the contract were, to say the least, equal to those of Russell. This being so, no act done or representations made by Russell as to the provisions of the contract will estop defendant to contend for a true interpretation of the contract, for where "the means of knowledge are equally open to both parties, silence or some act done does not estop the party doing the act, or remaining silent." [Blodgett v. Perry, 97 Mo. l. c. 273.] The defendant paid all the debts mentioned in the contract and therefore discharged all of the obligations it assumed to Huffman, therefore, we conclude that under the evidence and on the findings made by the referee under the law of the case, the judgment should have been for the defendant. It is therefore considered by

134—App—10

the court that plaintiff take nothing by his suit, that defendant go hence without day and recover its costs herein expended.   All concur.