A. J. CALTRIDER and J. D. KISTLER, Appellees, v. SIMON P. SHARON, Appellant.

**Evidence:** MENTAL INCAPACITY: QUALIFICATION OF WITNESS. A non-expert witness must not only first detail the facts and circumstances upon which his opinion of mental unsoundness rests, before he is permitted to give his opinion on that subject, but these facts must justify his conclusion to give it weight. The facts and circumstances detailed are held insufficient to qualify the witness to say that the party inquired about was incompetent.

**Guardianship:** MENTAL INCAPACITY: EVIDENCE. To authorize the appointment of a guardian for the property of an alleged incompetent, the evidence must disclose such unsoundness of mind as to render the party mentally unfit and incompetent to look after and

manage his own affairs. Evidence held insufficient to authorize the appointment.

*Appeal from Guthrie District Court.*—Hon. J. H. Applegate, Judge.

Monday, February 23, 1914.

Proceeding for appointment of a guardian for a person alleged to be of unsound mind. Trial to a jury and from its finding, with appointment of guardian based thereon, the defendant appeals.—*Reversed.*

*Ine D. Shuttleworth,* and *C. E. Berry,* for appellant.

*A. M. Fagan* and *Sayles & Taylor,* for appellees.

Withrow, J.—I. This proceeding was instituted by the plaintiffs, who are his sons-in-law, asking for the appointment of a guardian of the property of Simon P. Sharon, who it is alleged is incompetent to manage his ordinary business affairs. The cause was tried to a jury, and a verdict was returned finding that he was incapable of looking after and caring for his property, and that a guardian should be appointed. Following the verdict, a guardian was appointed, and from the order making the appointment and the verdict of the jury upon which it was based this appeal is taken.

At the time of the commencement of this proceeding, Simon Sharon was eighty-two years of age. On the part of the plaintiffs, the evidence tended to show that he was, and for years had been quite deaf, lame, and at a recent period had been ill for a time, but had recovered with but little, if any, impairment of his faculties beyond what they had been prior to his illness. He is illiterate, being unable to read or write, excepting that he would sign his bank checks and other documents. Up to the time of bringing this proceeding, there had been but little, if any, suggestion of his business incom-

petency. He was the owner of an eighty-acre farm which he had rented to a son, Altha Sharon, taking his notes for the rent, and later had entered into a contract to sell the land to the son for $100 per acre. The plaintiffs' evidence also shows that one of the petitioners had at different times sought to persuade Mr. Sharon to intrust the management of his business to him, but such proffer of assistance was refused, Mr. Sharon asserting that he was able to care for his own affairs. This son-in-law, Kistler, was in the dray business, residing in Casey. He had at one time desired to rent the farm of Mr. Sharon, and says that it was promised to him, and that the son, Altha, did not think such action advisable, and rented it to another. Later, when it was discovered that the father had entered into a contract to sell the land to his son, Altha, this proceeding was brought. In a general way the evidence on the part of the plaintiffs was to the effect: That Mr. Sharon at times seemed forgetful, possessed of an unreasonable feeling against his son, Altha, whom he claimed had caused the' death of a mare in working her, and frequently threatened to sue him for its value, and, when the son finally offered to pay for it, the father said to let it go. That the son, Altha, seemed to take the lead in transacting his father's business, buying supplies for him, and paying the bills, and that the wife, before her death, had rendered the same service. That in previous years he had trouble at times with his wife, and would go away for a time and leave her. That he is in recent years some weaker' because of his age and previous illness, and does not often go up town. When he wanted money from the bank, he sometimes sent for it by his son or daughter and would sometimes go himself. No instance is given by the witnesses for the plaintiff of any money being wasted or of property being dissipated. Such is not claimed, but it is feared he may do so. This statement in substance covers the testimony of Kistler, a son-in-law, and as a part of his examination he was asked, and over the objection of defendant was permitted to give, his opinion as to the capacity

of Mr. Sharon to transact business, based upon the facts testified to by him. The answer was, "I would say that he was not." The particular inquiry based upon such facts was, "What would you say as to whether or not he is of sufficient sound mind at this time to transact his ordinary business affairs?" The objection to this interrogatory, which was timely, was that the witness was not competent, and the testimony given was not sufficient upon which to base an opinion. The wives of the petitioners, his daughters, complain that he was in some ways unkind to their mother during her lifetime, and that he refused to pay her funeral expenses. It appears, however, that she had an estate of her own in which he shared after her death, and that he insisted the funeral expenses should be met from it. This, among other things, is presented as a peculiar and unnatural action, being one of the circumstances upon which some nonexpert witnesses based the ultimate opinion that he was of unsound mind. It appears that after the death of his wife he caused to be erected at her grave a monument which cost $240, and that the son, Altha, drew the check in payment for it. There is no suggestion that the father did not know or realize what he was then doing; but, on the contrary, it appears that it was his desire to so do. With this and with but little, if any, other material addition to the facts, the other plaintiff and the wives of the two were asked like questions and over objections permitted to give their opinions. Upon the propounding of the question to one of the witnesses there was a colloquy between court and counsel as to the form of the inquiry, and also as to whether it had sufficient basis in fact. Expressing doubt as to whether it was a proper interrogatory, the court permitted it to be answered, and error is assigned against such rulings.

II. On the part of the defendant, this appellant, the evidence is to the effect that the rent charge for the land represented the full value of its use, and that the contract price for the land was its full value, and this evidence is in no manner contradicted or weakened by other facts in the case. Mr.

Sharon is shown to have given personal attention to his affairs, transacting his business at the bank in the ordinary way, excepting that at times, as some evidence tends to show, he authorized others to sign checks for him and look after the balancing of his bank book. The larger amount of his cash means, less than $1,000, he left in the bank, carrying interest-bearing certificates of deposit. There is no evidence that in any of his business transactions he has been overreached. His management of his affairs seem to have been with good judgment, and, although he was deficient in education, there is evidence in the record of a considerable degree of shrewdness and care in money transactions. His banker, his physician, the merchant with whom he dealt, his neighbors and acquaintances, all testified that in his methods of business or in his conduct there was nothing to indicate unsoundness of mind affecting his ability to care for his own business and that he was competent to so do. His own testimony as a witness, called by the plaintiffs, gave evidence of a full consciousness of the nature of this proceeding, what he conceived to be its real purpose, and, aside from one instance of forgetfulness as to where certain of his valuable papers had been left, was consistent throughout with the idea of competency and an aggressive purpose to care for his own property.

A careful reading of the entire record renders it quite difficult for one to escape the conclusion that this proceeding is not a wholly disinterested one, but throughout it arises the suggestion that, while the conservation of the appellant's property is the main purpose, such protection is sought not less for others than for the defendant. The array of witnesses appearing for the defendant, his son, two other daughters, whose interest may be admitted, but supported by many others who were disinterested, and whose opportunities for seeing the appellant, observing his conduct and methods, and which were such as to fully warrant the conclusions drawn from them, to our minds presents a weight of evidence far heavier than that in support of the petition, and in the face of which,

so far as appears in the record, we could without any reasonable question hold that petitioners had failed in their case.

III. This discussion of the evidence has bearing upon two questions raised by the appeal. The first is that which we have earlier referred to as alleged error in permitting nonexpert witnesses to give their opinions upon the facts testified to by them. The rule is settled by many decisions that, before a non-expert witness may be permitted to testify to mental unsoundness, he must not only detail the facts and circumstances on which his opinion rests, but these must be such as tend to support or justify his conclusion. *Alvord v. Alvord*, 109 Iowa, 113; *Stutsman v. Sharpless*, 125 Iowa, 340. In the latter case, this court, in discussing that question said: "The facts on which are based an opinion of unsoundness of mind should appear in their natures somewhat inconsistent with mental soundness, as that the acts or talks were irrational or unusual, or such as would not ordinarily be anticipated from a person of his character." Measured by this test—and it is a reasonable and safe one, when prior soundness of mind is not questioned—we think there was wanting in the testimony of nonexpert witnesses the facts necessary to serve as a proper basis for the opinion that the appellant was incompetent to manage his business affairs.

1. EVIDENCE: mental incapacity: qualification of witness.

No statement of fact nor recitation of conduct presented a situation unnatural or unusual in the acts of the appellant. The assistance which was at times given him in his business was not different from that received by him from his wife during her lifetime, and at a time when no question is raised as to his competency. His relations to his son were not unnatural, even giving to the testimony concerning the dead horse all that can be claimed for it. The refusal to bear the funeral expenses of his wife, while perhaps different from what most other men might have done under like circumstances, has explanation in the fact that she had a private estate. It had a tendency to show a miserly nature, but

nothing more; and the subsequent purchase of a tombstone for her grave at a cost of $240, he being possessed of property worth about $9,000, cannot be classed as an unreasonable act. We are of opinion that, while the fact testimony given by the witnesses of the plaintiffs was competent upon proof of the issues, there was no sufficient basis in it upon which to admit a nonexpert opinion as to appellant's want of capacity, for all the facts were entirely consistent with his manner of life, his habits, his prejudices, and his conduct during the years when his mental capacity was not questioned.

IV. The test in cases of this character is that to warrant the appointment of a guardian there must appear such unsoundness of mind as shows that the party against whom the

2. GUARDIAN-SHIP: mental incapacity: evidence.

proceeding is brought is incompetent to look after and care for his property, and such in effect was given by the trial court in its instructions to the jury. Measured by this test, and excluding from the record the opinions of the nonexpert witnesses, which were no doubt considered of evidential weight in the submission of the cause, there remains in the record no testimony which in our opinion warranted the submission of the cause to the jury, and the motion by appellant for a directed verdict should have been sustained.

The conclusions reached render it unnecessary for us to consider other assignments of error.

Because of the error pointed out, the judgment of the trial court is *Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.