F. P. BURKE, Relator, v. FINLEY McCLURE, Judge of Probate Court of DeKalb County, Missouri, and W. F. BURKE, Respondents.

In the Kansas City Court of Appeals, November 6, 1922.

1. INSANE PERSONS: Guardian and Ward: Jurisdiction: Information Omitting to Recite That Proposed Ward was a Person of Unsound Mind was Insufficient to Confer Jurisdiction on Probate Court to Appoint Guardian for Such Person Under Statute. Under section 444, Revised Statutes 1919, providing for appointment of guardian for person of unsound mind, incapable of managing his affairs, on information filed to have person adjudged to be of unsound mind, reciting that "owing to the advanced age . . . his mind is of such a condition that he is incapable of managing and looking after his affairs and interests," was wholly insufficient to authorize probate court to issue citation for an inquisition of

insanity under the statute because the information failed to charge that the proposed ward was an idiot, lunatic or person of unsound mind.

2. ———: Notice: Service of Notice of Inquisition Issued in Vacation, Delivered to Complainant and Served by Him, Held Void. Where the record showed that the notice of inquisition concerning appointment of guardian for a person of advanced age was issued in vacation, delivered to the complainant and by him served upon the relator, *held* that the notice being jurisdictional and not in accordance with statute, it was void.

3. ———: ———: Inquiry as to Sanity Without Notice, Held Void. Without notice an inquiry as to sanity is void.

4. PROHIBITION: Where Error Committed was not Mere Irregularity, but One Which Went to Jurisdiction of Court to Appoint Guardian for Alleged Insane Person, Prohibition Will Lie. In a proceeding, instituted in probate court, to have a guardian appointed for a person of advanced age on the ground that he was incapable of managing his affairs, notice served on him by his son, who was the moving party and interested in the outcome, *held*, not to be proper legal notice and the error committed by such attempted service of notice not being a mere irregularity, but one which went to the jurisdiction of the court to maintain the inquiry, prohibition will lie to prevent court from taking cognizance of the matter.

ORIGINAL PROCEEDING IN PROHIBITION.

WRIT ISSUED.

*Erasmus C. Hall* for relator.

*Hewitt & Hewitt* and *J. W. Sullinger* for respondent.

ARNOLD, J.—This is an original proceeding in prohibition to prevent the probate judge of DeKalb County, Missouri and one W. F. Burke from taking any further cognizance of the matter of guardianship of relator.

On February 27, 1920, an information was filed before Frank B. Miller, judge of the probate court of said county, by William F. Burke in which it was alleged that F. P. Burke his father, relator herein, was then about ninety-one years of age; that he owned certain tracts of

land in DeKalb county which required "the care and attention of some person to look after and care for his interests therein," and that "owing to the advanced age of his father his mind is of such a condition that he is incapable of managing and looking after his affairs and interests," and praying that inquiry be made as to whether or not said F. P. Burke was capable of managing his affairs, and if the court should find him so incapable, that some suitable person be appointed guardian of his person and estate. Pursuant to said complaint, and on the same day, said judge of probate issued a notice directed to F. P. Burke, which reads, in part, as follows:

"That owing to your advanced age your mind is of such a condition that you are incapable of managing your affairs; that you have certain property interests which require the care and attention of a curator. Therefore, you are hereby notified to be and appear at a special term of the probate court aforesaid, at the City of Maysville, Missouri, at ten o'clock a. m. on the 22d day of March, A. D. 1920, then and there to hear and answer what may be alleged therein, and make such defense thereto as you may deem fit."

Thereupon said notice was by the court delivered to the complainant for service and the following return was made thereto;

"State of Missouri, County of DeKalb, ss:

"Executed the above notice at the County of DeKalb and the State of Missouri on the 17th day of March, A. D. 1920, by reading the same to said F. P. Burke and also by delivering to him, the said F. P. Burke, a true copy thereof.

W. F. BURKE

"Subscribed and sworn to before me on the 22d day of March, A. D. 1920.

Filed February 27, 1920          FRANK B. MILLER,
(SEAL)                                        Judge Probate
     FRANK B. MILLER,
          Judge of Probate."

On March 22, 1920, the court issued letters of guardianship to W. F. Burke, as guardian of the person and estate of relator and required of him a bond in the sum of $5,000, which said bond was duly executed, approved by the court, and witnesses and appraisers duly appointed. Thereafter, on October 10, 1921, relator filed in this court his petition for a writ of prohibition, setting out the full record of the above proceedings in the probate court. This record recites that on March 22, 1920, "the order heretofore made in vacation coming on for hearing, it is shown to this court that service was duly had upon said F. P. Burke, notifying him of the time and place of said hearing, by reading to him a copy of the notice, and by delivering to him a true copy thereof on the 17th day of March, 1920. The said F. P. Burke comes not, but makes default herein, though duly notified, as aforesaid. Covell R. Hewitt, a practicing attorney, is now appointed by the court to represent said F. P. Burke, and now comes said attorney in open court and accepts said appointment.

"And now this cause again being called for hearing, a jury is waived and the issues are submitted to the court, and the court finds from the evidence adduced that said F. P. Burke is not capable of managing his own business affairs. On application and recommendation of friends and relatives, W. F. Burke, a son, is hereby appointed as guardian and curator of the person and estate of said F. P. Burke, it being the judgment of this court that said F. P. Burke is incapable of transacting his own business affairs, and it is ordered that said W. F. Burke enter into bond in the sum of $5,000."

Further, in his petition to this court, relator denies that he is, or was, of unsound mind, or incapable of managing his own affairs; declares that all of the proceedings of the said probate court were illegal and void and that said judge of the probate court had no jurisdiction to entertain said proceedings or to make such order of appointment of guardianship; that no legal notice was served upon relator, and that all of said pro-

211 M. A.—29.

ceedings are in contempt of the State of Missouri, against the laws thereof, to the manifest damage, prejudice and grievance of relator; that all said proceedings are unwarranted usurpation of judicial powers and beyond the jurisdiction of said court. The prayer is for a writ of prohibition directed against Frank B. Miller, probate judge, and W. F. Burke, as above indicated. The application is sworn to by one August F. Gantz, son-in-law of relator and dated September 27, 1921.

Accordingly a preliminary writ was issued by this court and personal service made on respondents by the marshal thereof on October 15, 1921. Thereafter, on November 9, 1921, relator filed a motion setting forth the facts of the death of probate judge Miller and the appointment of his successor, Finley McClure, and the cause was thereupon revived in the name of said Finley McClure, as probate judge.

The respondents, in due time, each filed his return to the preliminary writ herein and each denied specifically all the matters set out in relator's petition. The return of respondent McClure filed March 4, 1922, is in the nature of a demurrer, while that of respondent Burke alleges that he believes and avers that the petition herein was made without the knowledge or consent of relator, and that it is not being prosecuted with his knowledge and consent but that it is being prosecuted through sinister motives on the part of affiant Gantz. The said return further alleges "that the relator has for almost two years with full knowledge of the matter and things done in and about the management and control of his, relator's, property and effects, quietly and peaceably acquiesced therein and thereto."

The cause is before us on the pleadings, and relator argues that the probate court was without jurisdiction for the following reasons: (1) There was no proper complaint filed. (2) There was no notice of the inquisition. (3) The ward was never present in court. (4) Service of notice was null and void. (5) The information wholly fails to state facts sufficient to au-

thorize the probate judge to issue a citation for inquisition of sanity, as provided by section 444, Revised Statutes 1919.

Section 444, Revised Statutes 1919, under which this proceeding was brought, is as follows:

"If information in writing, verified by the informant on his best information and belief, be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind, and incapable of managing his affairs, and praying that an inquiry thereinto be had, the court, if satisfied there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury: provided, that if neither party giving the information in writing, nor the party, whose sanity is being inquired into, call for or demand a jury, then the facts may be inquired into by the court sitting as a jury."

This is of a class of cases in which the citizen is sought to be deprived of both liberty and property, and those who seek such a result must do so upon statements which, if true, leave no doubt that the case falls within the statute. Unless the petition in such a case either follows the words of the statute, or uses language and states facts fully equivalent, it cannot give jurisdiction. It has been held that an allegation to the effect that a proposed ward is incapable of taking care of himself and his property, being in his dotage, is not sufficient to justify an appointment under a statute authorizing guardianship for insane persons. [In re Estate of Brown, 45 Mich. 326; In re Storick, 64 Mich. 685; Overseers of the Poor v. Gullifer, 49 Me. 360.] In State v. Montgomery, 160 Mo. App. 724, 733, this court declared that under this statute "the affidavit on which the insanity inquiry is based is required to state two things, viz., that the party is an idiot, lunatic, or person of unsound mind and that he is incapable of managing his affairs. The allegation that he is incapable of managing his affairs is as essential as the allegation that he is of unsound mind." It necessarily follows that it is as essential to

charge in the information that the person sought to be made a ward is an idiot, lunatic, or of unsound mind as to charge that he is incapable of managing his affairs. Failure of either allegation is fatal to jurisdiction.

Here the information recites that "owing to the advanced age . . . his mind is of such a condition that he is incapable of managing and looking after his affairs and interests." No charge is made that he was an idiot, lunatic, or person of unsound mind. We must, therefore, agree with relator that there was no proper complaint filed and that the information wholly fails to state facts sufficient to authorize the probate court to issue a citation for an inquisition of insanity under the statute.

This brings us to the question of notice. As shown by the record, the notice was issued in vacation, delivered to the complainant W. F. Burke, and by him served upon relator. This service was verified by oath of said W. F. Burke. That this was no service is clear, under the rule announced by this court in State ex rel. v. Duncan, 195 Mo. App. 541, following Crow v. Meyersieck, 88 Mo. 411, 415, to the effect that while the language of the statute is that the person "must be notified," the intention is that written notice must be served upon him. Such notice is a "jurisdictional paper" and has the force of a summons in ordinary actions. Without notice, an inquiry as to sanity is void. [Hunt v. Searcy, 157 Mo. 158, 176.] In the Duncan case it is said; p. 541.

"Does the service of notice by one who filed the information, who starts the inquiry, who, in effect, occupies the position of plaintiff in the case, and who is liable for the costs in the event the inquiry is not sustained, constitute such notice as the law will recognize in a matter of this kind? An inquiry into sanity is one of the gravest actions that can be brought against a citizen or which can affect him. It has to do with both his liberty and the right to possess and control his property. Notice of such a proceeding is not like a notice of some mere incidental step taken in an action after the

latter has been duly brought and the person proceeded against is already in court. In sanity inquests notice is the foundation of the court's right to proceed with the inquiry. It is jurisdictional. And the inquiry proceeding is an adversary civil action and not an *ex parte* matter, and notice is indispensable unless waived. [State ex rel. v. Guinotte, 257 Mo. 17.]''

Section 451, Revised Statutes 1919, provides that if the person alleged to be insane shall be discharged, the person at whose instance the proceeding was instituted shall pay the costs. It necessarily follows that the informant is an interested party. In civil actions it has never been the policy of the law that the person who brings the action and is interested therein should be allowed to serve the process or make return thereto. In this case it is not a question of whether or not W. F. Burke was acting honestly and with the best of motives, but whether the law can regard service of jurisdictional notice by one who is the moving party to a cause, and interested in the outcome, is any service, or notice, at all. Such a proceeding comes under the condemnation of the law and of public policy and the error committed is one which goes to the jurisdiction of the court to maintain the inquiry and is not a mere irregularity. In such a case, prohibition will lie. [23 Am. & Eng. Ency. of Law (2 Ed.), p. 202; Carter v. Bolster, 134 Mo. App. 135.]

In Shanklin v. Boyce, 275 Mo. 5, the court held that since it is necessary for a person who has been adjudged insane without notice to resort to extrinsic facts in order to show that the appointment of his curator was void, he is not relegated to an action at law, but may resort to equity in the first instance. Since we find the proceeding herein void *ab initio* for defect in the information and also for want of proper notice, the objections urged by respondents must fail, and the preliminary writ of prohibition heretofore issued is made permanent. It is so ordered.

All concur.