CHARLES P. HALL, APPELLANT, V. LYMAN S. HALL ET AL.,
APPELLEES.

FILED MAY 5, 1933.   No. 28610.

*Crossman, Munger & Barton,* for appellant.

*Sanden, Anderson & Gradwohl, John J. Ledwith* and
*Charles E. Matson, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY
and PAINE, JJ.

DAY, J.

This is a suit in equity commenced in the county court
of Lancaster county, January 30, 1930, invoking its equi-
table jurisdiction to vacate a decree of April 17, 1928,
finding Charles P. Hall mentally incompetent and appoint-
ing a guardian.   The allegations which form the basis
of this suit are that, in the original guardianship pro-
ceedings, the court was without jurisdiction, and that the
decree was the result of fraud, and, in addition thereto,
it is also alleged that, at all times involved in this case,
the plaintiff was and now is mentally competent to exer-
cise control and management of his property.   In the
former trial of this case in the district court, evidence
was introduced only as to the issues of jurisdiction and

fraud. From an adverse finding upon these questions, the plaintiff appealed to this court, whereupon this court sustained the finding of the district court that there was jurisdiction, but that there was constructive fraud, and the judgment of the trial court was reversed and the case remanded, with directions to try and determine the question of the competency of the plaintiff. For the former opinions in this case, see *Hall v. Hall*, 122 Neb. 228, and 123 Neb. 280. Upon a trial of this issue by the district court, the plaintiff was found to be incompetent at all times between April 17, 1928, up to and including the time of this trial, July, 1932. Therefore, the sole issue now presented to this court is the mental competency of Charles P. Hall at the time of the original guardianship proceedings, up to and at the time of the last trial.

"The incapacity of an individual, which, within the statute, will authorize the appointment of a guardian, is a question of fact in each case for the trial court, whose finding thereon will not ordinarily be disturbed." *Keiser v. Keiser*, 113 Neb. 645.

Mr. Hall is a man 83 years of age who lived many years on a farm near Elmwood, Nebraska. By hard work and careful management, he had raised a family of nine children and acquired considerable land and money. At the beginning of this controversy, he owned 560 acres of land near Elmwood, 1,053 acres in Hitchcock county, Nebraska, and securities of the approximate value of $90,000. For a man who came to the state at the age of nine, in 1858, and started for himself in 1869 by taking a homestead, which is a part of his present property near Elmwood, to accumulate so much property indicates industry, thrift, and business ability. The wife he brought, as a bride, to his homestead in 1876, who was the mother of his nine children, died in April, 1926. The record speaks eloquently of the great part she played in his success. It is apparent that she also contributed more than her share toward the management of the business affairs of the family. She advised her husband, kept books, and

was in his full confidence until after 1922. At this time, he had a bad injury to his head, after which, if the uncontradicted testimony is true, he relied upon her less and followed the advice of one outside the family. One, John Fowler, who sold mortgages and bonds, became and continued to be for a period of several years his trusted confidential business adviser, investing practically all of his funds. In January, 1928, about two years after the death of his first wife, he married Mrs. Estella Fowler, now 69 years of age, mother of John Fowler.

Subsequent to this marriage, the guardianship proceeding was commenced in February, 1928, in the county court. While the case was being tried, the hearing was interrupted and a guardian was appointed at the suggestion and upon the nomination of Hall himself. This guardianship was not offensive to Mr. Hall, who cooperated with and assisted the guardian in the management of the estate for a time, but in January, 1930, Mr. Hall commenced this suit in equity to vacate the judgment of the county court of April, 1928, as hereinbefore outlined.

After a careful reading and consideration of the extremely large record, consisting of six large volumes, it leaves us with an abiding conviction that the plaintiff in this case has insufficient mental capacity for the management of his property and that his mental condition is such that he is dependent upon and guided by others in its management. Such a condition requires the appointment of a guardian. *Keiser v. Keiser,* 113 Neb. 645; *Caltrider v. Sharon,* 164 Ia. 287; *In re Northcutt,* 81 Or. 646. In *Lang v. Lang,* 157 Ia. 300, it was held that, where a person has insufficient mental capacity to protect his property and he is guided by others, a guardian should be appointed.

The evidence in this case establishes that Hall is incapable of the management of his property. He claims to have certain conservative standards of judging an investment. For about ten years, Fowler, a son of his present

wife, has handled his investments, and these investments do not conform to said standards, and Hall did not know, even at the time of the trial, that they did not. This is not to pass upon the soundness of those investments, but it is evident that they represent the judgment of Fowler and not that of Hall. Where one is by reason of old age, disease, weakness of mind, or from any cause unable or incapable, unassisted, to properly manage his property, he is incompetent, and a guardian should be appointed. *Guardianship of Farr*, 169 Wis. 451; *Burke v. McClure*, 211 Mo. App. 446. Where one is incompetent to manage his affairs and is dependent upon a stranger, a responsible guardian should be appointed. The opportunity for an unauthorized adviser of such a person to take advantage of such an incompetent is too great a risk to the incompetent.

The testimony of Hall discloses that he is incompetent to manage even such a small matter as the allowance to him by his guardian. It is not a case of poor book-keeping, as contended by his attorneys, but amounts to a total lack of any definite notion as to his income and his expenses. In his testimony in this case, he could not remember important items relative to his business affairs from question to question. He demonstrated his lack of capacity to manage his property and that he was acting under the influence of others.

Medical experts were called by both plaintiff and defendants. As is usual in such cases, they differed in their conclusions as to the competency of Hall. However, when we consider this testimony, together with all the other evidence in the case, and especially consider the reasons given for conclusions, as well as noting that many things established by the evidence were unknown to them, some of which they admit would change their opinion, if true, we conclude the expert testimony supports the finding of the trial court that Hall was and is incompetent to manage his property.

The judgment of the trial court is

AFFIRMED.

ROSE, J., did not sit or take part in the consideration or decision of this case.